## Waller v. Georgtown Board of Education.

(Decided June 19, 1925.)

### Appeal from Scott Circuit Court.

1. Schools and School Districts—Contract for Sale of School Building by Board of Education to Corporation with Option to Lease and Rebuy Held Within Power of Board to Make and Not Violative of Constitutional Limitations on Indebtedness.—Contract by which board of education, without sufficient funds to complete proposed school building, sold building for a fixed consideration in excess of that which building, at time of sale, cost the board, to corporation organized to purchase building, with option by board to lease and rebuy building, but no obligation to do so, and holders of corporation bonds, in case of default, being required to look to property, and having no right to sue the board, held within power of board to make, in view of Kentucky Statutes, section 3587a-1 et seq., and not to require board to incur an indebtedness in excess of that authorized by Constitution, sections 157, 158, without a vote of voters thereon.

2. Schools and School Districts—Statute Does Not Limit Power of Board of Education to Incur Indebtedness.—Kentucky Statutes, section 3587a-16, investing board of education with power to borrow money in anticipation of taxes provided amount so borrowed shall not exceed 50 per cent of anticipated revenue for fiscal half year in which borrowed, constitutes a limitation on actual borrowing of money, and not on power to incur an indebtedness or obligation.

FORD & FORD and JAMES BRADLEY for appellant.

BRADLEY & BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This action, brought by appellant, a citizen and taxpayer of the Georgetown city school district, against ap-

pellee, the Georgetown board of education, seeks a declaration of rights under the Declaratory Judgment Act, chapter 83, Acts of 1922, under the following facts. The Georgetown city school district has bonded itself in the sum of $63,000.00, being the constitutional limit of its power at this time to incur such an indebtedness. The purpose of this bond issue is to build a much needed school house.

Private donations have brought this fund up to about $88,000.00. A site has been purchased and it is the wish of appellee to erect thereon a school building adequate to the needs of the community it will serve. However, the funds left after the purchase of the site will by no means pay for such a building, but, as far as they will go, will be used in its erection. The people of this district propose to organize a corporation for educational purposes without capital stock and to be known as the Georgetown Public Service Corporation. This corporation, when organized, proposes to bond itself in the sum of $100,000.00. The citizens of the community have already oversubscribed such proposed bond issue. These bonds, bearing six per cent interest, are payable serially, one-twentieth of the principal amount falling due each year. With the money raised from this bond issue, the Georgetown Public Service Corporation proposes to buy from the appellee the incompleted school building and to pay therefor the sum of $100,000.00 cash, and then to place said premises in lien to secure its bonds. With this sum the appellee will complete the school building. At the same time that the building is sold to appellee, the latter and the corporation will enter into a contract, a copy of which is in this record. By this contract the corporation will lease for one year to appellee the school building, and appellee will agree to pay as rent therefor an amount equal to the insurance, depreciation and repairs on the building for that year, the interest on the outstanding bonds of the corporation, the expenses of the trustee of the corporation's mortgage and the further sum of $5,000.00, which the corporation will use in retiring the first installment of bonds due. On payment of such $5,000.00 the appellee will be given a second lien on the property to the extent of that payment. The appellee has an option each year thereafter, during the period of twenty years, to renew the lease on like terms. The

lease and contract specifically provide "that the said board of education (appellee) does not bind itself under this agreement to lease said property for more than one year or bind itself for the rentals thereon for more than a one year period." In the event the appellee fails to pay the rentals or renew the lease, the contract provides that the school building shall be sold, the outstanding bonds of the corporation paid off, and then whatever is left shall be turned over. to the appellee. At the end of twenty years if the appellee has renewed the lease for so long and paid its rents, or sooner if appellee will pay off the outstanding bonds and interest, the school building shall become the property of the appellee. It is agreed that the revenues of the appellee for the first year are amply sufficient to take care of its ordinary budget and likewise to pay the rentals proposed.

Appellant insists that the foregoing arrangements are illegal in that the appellee will incur an indebtedness in excess of that authorized by the Constitution, and without a vote of the voters being taken thereon. Constitution, sections 157, 158. It will be observed from the quoted portion of the lease that the only obligation which appellee assumes is the rent for one year, and this is within its constitutional limitations. It is absolutely optional with appellee whether or not it will renew the lease or whether or not it will buy the property. The scheme proposed is not a mortgage. The transaction is an absolute sale of the school building for a fixed consideration in excess of that which at the time of such sale it cost the appellee. The appellee has the option to lease and re-buy but no obligation so to do. The appellee has the right to buy back the property at any time, but neither the corporation nor any one else can ever force it to buy it back. Should the corporation default in the payment of its bonded indebtedness the holders of those bonds must look to the property, which is that of the corporation, and has no right to sue the school board. It is clear that under sections 3587a-1, et seq., Kentucky Statutes, appellee has the power to sell this property to the corporation and to enter into the lease in question. It is equally clear that the plan proposed does not violate any constitutional limitation on the power of the appellee to incur an indebtedness. Such was the holding of this court in the very similar case of Overall v. City of Madi-

sonville, 125 Ky. 684, 102 S. W. 278. The facts in this case were that the city of Madisonville desired to erect a municipal lighting plant to cost, exclusive of lot and building, about $27,000.00, which amount was more than the revenues and income of the city for that year. The city proceeded to erect the lighting plant by piecemeal, paying for so much of the work in each fiscal period as it had funds to pay for, and not expending in any such fiscal period more than its revenues for that time. The lighting plant was built on a lot which the city did not own. It was contended that the city could not legally contract for the lighting plant in piecemeal, that it had no right to put the machinery on a lot or in a building it did not own, and that the arrangements under which the city was erecting this lighting plant were a violation of the constitutional limitations against incurring an in-indebtedness. Answering these contentions, this court said:

"Appellant contends that the city could not legally contract for a light plant in piecemeal. The reason assigned is that no part of it is valuable as a public utility till all of it is assembled. The reason is not satisfying. . . . In the matter of buying and installing such plant, the city is left wholly to the judgment of its council as to the kind, the cost, when and where it shall buy, and how much at a time. There is only one limitation upon the city; that is, it shall not become indebted beyond the income and revenues of the year without the assent of two-thirds of the voters voting on the question. The Constitution did not design an interference with a free exercise of a city's judgment as to its expenditures for public purposes, provided it had the means at hand to pay for them. It did not discourage cash payments, but rather encourage them. The course of appellee city in buying only what it could pay for, and as it could pay for it, is one that might be more frequently followed with satisfactory results to taxpayers. . . . A still further objection is that the city does not own the lot or building in which the machinery is placed. The record does not show the arrangement between the city and the lot owner, whether it is by lease with option to buy, or how that is. A lease for one year, with an option to the city to continue it from year

to year, or to buy it at a fixed price, would not be repugnant to the Constitution as incurring a liability beyond the revenues of the year. The lease at $400.00 . . . would not, when added to the other items examined and discussed, exceed the city's revenues for the year. Such a lease would be sufficient consideration to support the options named; but the city would not be bound on the options until it accepted them. As there is nothing showing that the city has violated the Constitution by incurring a debt beyond the constitutional limitations, we cannot control the discretion of the council in bargaining for its lot, and making such terms therefor as suit it, and as are not unlawful.''

There is, therefore, no merit in appellant's first contention.

Appellant also urges that the proposed plan is in violation of section 3587a-16, Kentucky Statutes, which after investing the appellee with power to borrow money in anticipation of taxes, provides that the amount so borrowed shall in no case exceed fifty per cent of the anticipated revenue for the fiscal half year in which the same is borrowed. It is obvious that this limitation is one on the actual borrowing of money, and not on the power to incur an indebtedness or obligation. This power is controlled by the constitutional restrictions hereinbefore discussed.

As the lower court adjudged valid the plan proposed, its judgment is affirmed.