## Franklin County et al. v. Franklin County Board of Education.

(Decided March 5, 1937.)

LESLIE W. MORRIS and MARION RIDER for appellants.

POLK SOUTH, Jr., for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Franklin circuit court sitting in equity. A dispute has arisen between the fiscal court of Franklin County and the Franklin County Board of Education as to which of the two agencies has the right to designate the site to be used in the construction of a high school building in the

Forks of Elkhorn school district of Franklin County. This is the only question involved.

For a number of years, various boards of education have been following a scheme to procure new buildings by conveying a site for the building to a nonprofit corporation, which, in turn, would erect a building subject to the lien of first mortgage bonds in such amount as was necessary for the erection of the building, and then lease the property back to the school board for one year, with an option to renew, at a rental sufficient to cover interest, maintenance, and sinking fund requirements, together with an agreement to reconvey the property to the school board upon the final amortization of the bonded indebtedness. For example, see Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S. W. 498; Rothchild v. Shelbyville Board of Education, 254 Ky. 467, 71 S. W. (2d) 1033; Bridges v. Scott County Board of Education, 235 Ky. 141, 29 S. W. (2d) 594; Emmons v. Board of Education of Lewis County, 260 Ky. 18, 83 S. W. (2d) 849.

Upon the creation of the Federal Public Works Administration and the appropriation of funds by the federal government to carry out the purposes of that act (40 U. S. C. A. sec. 401 et seq.), it appeared more beneficial and less expensive to secure grants or loans through the federal government than to try to procure funds from the sale of bonds to private individuals. In order to secure these loans, however, it was necessary to make them through a public agency rather than to follow the method theretofore adopted of conveying the school property to a private nonprofit corporation. With this in view, the Legislature, at the 1934 Extraordinary Session, enacted chapters 14 and 15, which are now section 4421-20 et seq. and section 4421-24 et seq. of the 1936 Edition of the Kentucky Statutes. Each act provided that it was intended to create an additional method for the acquisition of school buildings, and was not intended to alter, amend, or repeal any other statute. Chapter 14 authorized boards of education to convey a site for a school building to the county and directed that the county should then enter into the necessary contracts for the erection of a building on said site, subject to the approval of the board of education and of the superintendent of public instruction. Chapter 15 (section 1) authorizes counties "to estab-

lish and erect" school buildings, but says nothing about who shall acquire the site on which the building is to be established and erected. Section 8 of chapter 15, however, requires that the plans and specifications for the building must be approved by the board of education and by the superintendent of public instruction, and that the board of education must agree to lease the premises before further steps are taken in the construction of the building. Section 14 of chapter 15 provides that, upon the payment of a sufficient sum to amortize the cost of erection of the building, together with other expenses, the county shall convey the property to the school board.

It seems obvious that chapter 14 and chapter 15 are complementary but not identical. Under chapter 14, where the school board has a site for the erection of a school, it may convey this property to the county, and the county thereupon "shall enter into a contract * * * for the erection on said site of a building." It will thus be seen that, under chapter 14, the county has no choice in the matter and is simply a conduit through which the board of education secures a loan and a building. Chapter 15, on the other hand, makes no express provision for securing a site. The county, however, is powerless to erect a building, or even to select an architect, without the approval of the board of education. In the last analysis, chapter 15 does nothing more than give the county the power necessary to carry out the project on behalf of the board of education. The statute (chapter 15, sec. 4) expressly provides that the bonds issued shall "not constitute an indebtedness of such county within the meaning of any constitutional provisions or limitations." The intention of chapter 15 was to provide a method whereby funds might be obtained through the co-operation of the school board and the fiscal court. Certainly there is nothing in either chapter 14 or chapter 15 which justifies a conclusion that the fiscal court may exercise any legal compulsion on the school board in the selection of a site for a building.

Examined in the light of the history of these plans in the past and of the fact that the project is purely and only a school project, we find no difficulty in concluding that it is the board of education, and not the fiscal court, that has both the power and the duty, under the

statutes, to determine the site upon which the building shall be erected.

Judgment affirmed.