## Scott County Board of Education v. McMillen.

(Decided Nov. 5, 1937.)

(Dissenting Opinion Nov. 19, 1937.)

484

BRADLEY & BRADLEY, and WOODWARD, DAWSON & HOBSON for appellant.

ARTHUR W. GRAFTON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The question before us upon this appeal is one challenging the validity of the proposed financing plan of the Scott County Board of Education for the construction or improvement of some certain three of its county school properties.

The plan of financing here proposed and accepted by the board for carrying out its desired construction and improvement work on a certain named three of its county school properties was, except in two particulars, hereinafter set forth, substantially the same as the general financing plan set out and first approved in Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S. W. 498, which has been since approved and followed in the many subsequent cases presenting substantially similar financing plans. Compare Bridges v. Scott County Board of Education, 235 Ky. 141, 29 S. W. (2d) 594; Button v. Trimble County Board of Education, 235 Ky. 771, 32 S. W. (2d) 345; Rothchild v. Shelbyville Board of Education, 254 Ky. 467, 71 S. W. (2d) 1033; Sizemore v. Clay County et al., 268 Ky. 712, 105 S. W. (2d) 841, 842; Bellamy v. Board of Education of Ohio County, 255 Ky. 447, 74 S. W. (2d) 920; Lawson v. Board of Education of Greenup County School Dist., 265 Ky. 630, 97 S. W. (2d) 542.

It here appears by the petition that when the appellant board had about consummated its proffered and accepted financing plan and was proceeding to carry it out by making a conveyance of three of its school properties, located in Stamping Ground, Oxford, and Sadieville, to a nonprofit holding corporation, this friendly suit was filed by the appellee, McMillen, a citizen and taxpayer of Scott county, to test its validity by enjoining the conveyance.

Upon a hearing by a special judge of his motion for a temporary injunction against the defendant board's carrying it out, the same was overruled, and the injunction denied by the special judge chosen to hear it. This was followed by an application to a judge of this court for an order directing the granting of the injunction which had been refused by the trial court.

Upon a hearing of this motion, it was here decided that the special trial judge had acted without jurisdiction or authority in hearing and overruling the motion, and the case was remanded, without prejudice, back to the circuit court. The opinion, while so holding upon such ground, did further intimate (without deciding) that the board's proposed financing plan might be subject to meritorious attack in respect to two of its provisions: (1) In proposing to make a group conveyance of its three named school properties to the corporation, which were to be in turn by it jointly mortgaged to secure the payment of one bond issue of $100,000, the proceeds of which were to be used by it, under the board's direction, for the improvement of the three school properties conveyed it, but without designation or specification as to what part or how much of the amount thus procured was to be spent on each of the three properties, thus leaving all three in lien or subject to foreclosure for the full amount of the mortgage, even though only a nominal part of such sum might have been spent on one or two of them; and (2) in the provision of the contract proposing to refund to the holders of its bonds all income and ad valorem taxes which might be assessed by the United States or the state of Kentucky, or any of its political subdivisions, against the holders of the bonds or upon their receipt of interest therefrom, in which case it provided that upon this contingency arising, of the holding corporation's being required, under the terms of the bond issue, to make such refund to bondholders of taxes paid, it was

authorized to reimburse itself for the amount of its refund so made by increasing in such corresponding amount the agreed annual rentals paid by the board of education for its use of the three school sites leased it, and which larger rental the board must then pay, provided it exercised its option to renew its school lease each year.

Upon the return of the case to the Scott circuit court, the plaintiff filed an amended petition, attacking the validity of the proposed plan upon the two suggested and additional grounds, supra, contending that by reason thereof the board's plan of financing the cost of the proposed school improvements was void, and by reason of its alleged invalidity sought an injunction against its being carried out.

A demurrer to the amended petition was overruled, whereupon appellant filed answer, alleging, in substance, that the two provisions attacked as invalid were incorporated in the plan after a full and careful investigation of their desirability and after ascertaining that such provisions would result in substantial savings in the cost of its financing the making of the desired improvements.

Upon the appellee's demurrer to the answer being sustained and appellant declining to plead further, final judgment was rendered, perpetually enjoining the carrying out of the proposed financing plan, by reason of its embodying these two named provisions adjudged to invalidate it.

The appellant has appealed, earnestly insisting that both of the criticised provisions contained in its proposed financing plan, by the trial court held to invalidate it, were but administrative matters coming within the authority and discretion granted the County Board of Education, and, further, that the attacked provisions are economically sound and will result in substantial savings to the Board of Education in financing the cost of the desired improvements, and, as a result thereof, to the appellee taxpayer and all other taxpayers of the county similarly situated.

Further, its answer alleged, and counsel by brief argues, that in the exercise of its discretionary powers granted it under the statutes, it determined that these additional buildings were needed in its school district, the fair cost of which would be $100,000; that its unincumbered income and revenue did not amount to so

large a sum, but did amount to over $10,000, which was sufficient to pay the interest on and amortize the $100,000 bond issue it sought to procure for the improvement of its said three schools; that the board, after maturely considering the ways and means available for the acquisition of its much needed and desired additional school buildings, finally adopted the proposed plan, which was one substantially similar to that approved in the Waller Case, supra, and the many other cases following it; that the board, having contacted prospective purchasers of the proposed bond issue to find out what rate they would have to bear and the price at which they could be sold, found out that if all three properties to be improved were included under the same mortgage, and if the bond was so drawn as to make it tax free in the hands of the purchasing public, the bond could be sold bearing an interest rate of only 4 per cent. per annum; that if there had to be separate bond issues, each secured by only one property, the interest rate would be higher; and, further, that if the tax free nature of the bonds were not made clear, the interest rate would have to be increased by at least 1 per cent.

Further, the answer alleged that the board reached the conclusion, after ascertaining the above facts, that the result of following such plan as here proposed would be to substantially reduce the annual rentals for these improved school sites.

The appellee, on the other hand, while frankly stating his action was brought as a friendly suit and that as a citizen and taxpayer of Scott county he is anxious for the court to approve the proposed financing plan, if a sound legal basis can be found therefor, yet submits that the question thus raised as to the merit of these two urged objections to the financing plan calls for the serious consideration of the court.

In considering these objections, we deem the question here before us is, regardless of our opinion as to the wisdom or lack of it, in the proposed plan, or whether its terms evidence a salutory or improvident policy followed by the appellant board in adopting the proposed financing plan, containing these alleged objectionable features, for procuring funds with which to make the desired improvements upon these named school properties it owns, Does the board possess the legal authority to carry out this proposed financing plan?

By section 4399-20, Kentucky Statutes, which is a part of the 1934 School Code, it is provided, in part, that:

"The board shall have control and management of all school funds and shall have under its control and management all public school property of its district, and shall have the right to use such funds and property to promote public education in such ways as it may deem necessary and proper. Each board shall exercise generally all powers in the administration of its public school system, appoint such officers, agents, and employees as it may deem necessary and proper, prescribe their duties, and fix their compensation and terms of office."

Further, by section 1, chapter 14, page 119, Acts of 1934 Extra Session, now incorporated in Kentucky Statutes as section 4421-20, county boards of education or independent school districts located outside of incorporated cities of the county are authorized to convey real estate for school sites to the county for the purpose of qualifying for financial assistance from the federal government and clearly have equal authority for procuring it, by like plan, from other sources.

In view of such empowering statutes, in the late case of Bellamy v. Board of Education, 255 Ky. 447, 74 S. W. (2d) 920, where they were considered and interpreted, it was held that the County Board of Education was thereby expressly vested with the broad power and authority to control, buy, and sell real estate for school sites, and to control and manage all public school property of its district; and, further, that it has the right to use such school funds and property to promote public education in such ways as it should, in the exercise of its judgment and discretion, deem necessary and proper, and that, looking to such end, it might convey school property to a holding corporation, although title to school property is technically vested in the commonwealth.

Influenced by such holdings, so declaring and defining the ample scope of the authority and broad statutory powers vested in the County Board of Education, we conclude we cannot appropriately sit in critical judgment upon the board's exercise of these broad powers, or substitute our judgment and discretion for

that given it in the matter of its determination of what plan of financing its school needs represents the best policy, or whether its course was wise or otherwise in here adopting the proposed financing plan for improving three of its schools, even though embracing, as it does, the two criticised provisions of making group conveyances of its school sites to be put in lien for the payment of the entire bond issue made thereon or for the refunding of any taxes paid by the holders of such bonds, issued against the conveyed school properties, by the corresponding increase of rental to be paid for the improved property leased the board under such plan. The determination of what is a proper financing plan having been lodged with the board, its good-faith adoption of a plan must rest in the exercise of their discretion, not ours.

The authority vested by the statutes in the board to handle and manage all public school property of its district, and the authority expressly given it to convey generally school sites for procuring financial assistance for their improvement, by it deemed requisite, is clearly a general and comprehensive power, given it without limitation, express or implied, effective to forbid it from making its financing plan as here proposed, by a group conveyance of three of its school properties, or from therein providing for a refund of all taxes (ad valorem or income) paid by the holders of its school bonds during such one year term, by allowing for a corresponding increase to be made by the corporation in the amount of its annual rental agreed to be paid upon the improved properties leased back to the board, should it exercise its option to renew the lease.

The yearly rental of some $7,300, here provided by the contract to be paid upon these improved school properties leased back to the board, conditioned upon its exercise of its option to renew its lease thereof for such year, comes clearly within the amount of its unincumbered annual school revenue, and should that term of the lease, providing for a refund of taxes paid by its bondholders, result in such an increase of its annual rental as to require an amount in excess of the board's unincumbered annual income of $10,000, and thus violate the constitutional limitation imposed by section 157 of the Constitution, then clearly such result would foreclose the legal right or authority of the board to exercise its option of renewing the lease for such year.

The question as to whether or not the present financing plan is one which we, upon substituting our judgment and discretion for the board's, would adopt is not here material or one with which we are concerned; it being enough that the board is here, we conclude, by the statutes cited, supra, and our construction of them (made in many cases presenting very similar financing plans), authorized by the ample powers given it to do the things here assailed as rendering the contract made for carrying out its proposed financing plan, here before us, invalid.

Having reached the conclusion that the appellant is by these statutes vested with the authority to carry out the financing plan here proposed, it follows that the trial court erred in granting the permanent injunction restraining the board from carrying it out upon the ground that the same was invalid, and such holding not being in harmony with our views, as above indicated, the judgment is reversed.

The court, in lieu thereof, will enter a judgment upholding the validity of the proposed plan and overruling the motion to enjoin the board from carrying it out.

Whole court sitting, except

BAIRD, J., was absent.

THOMAS, Justice (dissenting).

The plan adopted in this case by the Scott County Board of Education is not the statutory one provided by sections 4421-20 et seq. of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, since it by its express terms is made to apply "solely to school buildings constructed with financial assistance from the Federal Government." The plan adopted and approved by the court is an outgrowth of the one first judicially declared by this court in the case of Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S. W. 498, and in others thereafter rendered extending the plan, one of the latest of which is Bellamy v. Ohio County Board of Education, 255 Ky. 447, 74 S. W. (2d) 920. In the Waller Case it was made applicable only to the encumbering of a single piece of property with the amount of the cost of the improvements proposed to be made thereon. When so confined each item of property would be made to bear its own burden. The question, as to whether that

policy could be departed from by expanding the right so as to permit other units or items of property owned by the board of education to be encumbered under the plan to secure funds with which to improve an *entirely separate* and distinct item of property, has never been presented, argued, or expressly determined by this court, although such a departure may have been involved in some of the cases, but to which the attention of the court was not called. The same may be true as to summary determinations made by members of this court in applications relating to injunctions pursuant to the provisions of section 297 of the Civil Code of Practice. If, therefore, it be error—as against sound public policy—for the judicially declared plan to be so expanded as to allow the encumbrance of unimproved school property to secure funds with which to improve other and distinct pieces of school property, the court should not hesitate to so declare in this case, which, as indicated, is the first one where the question was presented and argued. Of course, such a declaration would not affect any of the bonds or undertakings heretofore entered into and approved by the court, although the improper encumbrance of unimproved school property with the funds realized, was made in such cases.

The plan, after all, is but a detour around that which was unlawful before the plan was declared; but by this dissent I do not purpose to question our former opinions, if the plan they approve is confined and restricted as it was presented in the Waller. and many other following cases, i. e., that the raised funds were secured only by the parcels of real estate upon which the expenditure was made, and only to that extent. The authority approved and upheld by the majority opinion confers the right on a county board of education to so encumber every schoolhouse and grounds, under its jurisdiction to secure the amount of an improvement that might be made only on one of them. That unrestrained plan might result, not only in plastering the school property in all of the territory within the county with encumbrances, but it opens the door for an ambitious board to engage in the erection of a building or other improvements on a single lot or piece of school property far beyond the necessities of the case, and the cost of which could never be realized on a sale of that particular lot, if foreclosure should eventually be resorted to. Not only so, but the plan as so approved by

the majority opinion destroys all incentive or employment of precautionary measures that would otherwise be advanced by the purchaser of the bonds to limit the expenditure within reasonable bounds, since now they no longer become interested in what a sale of the specifically improved property would produce, because they know that all of the other encumbered school property within the district is also pledged for the same indebtedness and there would not, therefore, be any deficiency in payment after exhausting the lien on the improved piece of property. Were it otherwise and the right restricted as herein advocated, the bondholder would be limited to the lien on the particular piece of property improved for the amount spent on it, and he would be extremely interested that such amount be so limited as that there would be a reasonable certainty of realizing it by a sale of that particular piece of property, if it should become necessary to do so. Such consequences, to my mind, create a situation where it ought to be declared as against public policy for such boards to encumber any particular piece of property in their charge for any amount over and above the improvement to and upon *it*. Each piece of school property within the district should carry its own burden. Potent and most highly probable evils resulting from a contrary course, as approved by the majority opinion, are many and are so patent that I will mention no others than the ones referred to. Because thereof I dissent from the opinion approving what I have seen proper to denominate as the "expanded" plan.

I also find myself unable to agree to the stipulation in the set-up, whereby the school county district, through and by its board of education, agrees to pay all taxes that might be assessed against the holders of the bonds proposed to be issued as intangible property, including any and all income taxes that such holders might be called upon to pay as income from the interest that they obtain from their investment. Under that agreement, which the majority opinion also approves, the bondholder becomes entitled to collect from the district any and all taxes, ad valorem, income, and otherwise, that he might be required to pay as such holder by any jurisdiction wherein his bonds occupy a situs for taxation. That agreement is broad enough to and does embrace federal taxes, state taxes, county and municipal taxes, school taxes, and every other kind that it is lawful

to levy and assess at the place where the assessment is made. I can readily see where it is not only competent but proper for encumbrances to stipulate for the repair, care, protection, and maintenance of the encumbered property and keep it insured, but I am wholly unable to give my approval—in the absence of plain legislative direction—to a plan whereby a *public* functionary might legally agree to pay all taxes against the holders of its indebtedness representing intangible property in their hands. Individuals might well so agree, but I think that a sound public policy forbids any such agreement by fiscal officers of divisional units of government, since the underlying principle of public policy is, that "no one can lawfully do that which has a tendency to be injurious to the public or against the public good." 50 C. J. 858; Gordon v. Gordon's Adm'r, 168 Ky. 409, 182 S. W. 220, L. R. A. 1916D, 576, Ann. Cas. 1917D, 886; and numerous other domestic cases cited in Caldwell's Kentucky Judicial Dictionary under the heading "Public Policy." In support of that stipulation, however, it is argued that by so agreeing the county board of education obtains a corresponding reduction in the rate of interest; but which is only problematical, and only furnishes a weapon with which to fight the battle of the bondholder in the war waged by him to sustain the argument.

Furthermore, the upholding of that (tax payment) stipulation by the majority opinion greatly confuses and potentially unsettles the amount of annual rental that the board of education might eventually be called upon to pay for the use of the encumbered property in operating the public schools of the county. The amount so agreed to be paid, as contained in the set-up, was calculated and fixed. Refunds for taxes paid by the bondholders will operate to increase that amount and there is no method by which such increase, if it should occur, can be measured. There are other reasons why this stipulation should not be approved, but what has been said upon this and the other point upon which I disagree is sufficient, as I conclude, to sustain my position without further analyzing the situation whereby that position could be strengthened.

If I did not deem the questions of super-importance, I would not dissent—much less express my dissenting views in a separate opinion.