## Morgan et al. v. Fayette County Board of Education et al.

May 28, 1943.

Hubert Meredith, Attorney General, W. Owen Keller, Assistant Attorney General, Stoll, Muir, Townsend, Park & Mohney, and Stites & Stites and Norris McPherson for appellants.

Keenon, Huguelet & Odear, and Grafton & Grafton and Woodward, Dawson & Hobson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The question is essentially one of power of a county in substitution of a non-profit private corporation to accept title to school property, issue revenue-liquidating bonds to cover the cost and lease the property to the County Board of Education under similar terms of amortization and lease as the original scheme of financing the construction of the improvements.

Several years ago the Fayette County Board of Education in order to secure new school buildings caused a non-profit corporation, known as the Fayette County High School Company, to be organized. The Board conveyed certain land to it for the purpose of having the company erect the buildings thereon, issue revenue bonds for the cost and lease the same back to the board for one year, with the option of renewal and upon such other terms that in time the bonds would be paid, the lien re-

leased and the property conveyed back to the board with the improvements. The plan had been previously approved as within the general powers of boards of education. Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S. W. 498; Scott County Board of Education v. McMillen, 270 Ky. 483, 109 S. W. (2d) 1201. In 1934 the legislature gave it specific statutory sanction, with authority of cities and counties to act instead of private holding companies. Chapters 68 and 69, Acts of the 1934 regular session; Chapters 14 and 15, Acts of the 1934 extra session, all of which acts are now embodied in KRS 162.120 et seq. See Davis v. Board of Education of the City of Newport, 260 Ky. 294, 83 S. W. (2d) 34, in which other opinions are collated. The Fayette County High School Company issued $3\frac{1}{4}\%$ bonds to the amount of $84,000 as of January 15, 1939. The matured bonds have been paid and a balance of $75,000 is outstanding. Because of some tax problems it has been deemed well by the Board of Education and the County that the fiscal court should take over the property and be substituted for the holding company. The owner of all the bonds of the High School Company has offered to exchange them for similar bonds, realizing they would constitute no debt of the County, the sole security being revenues and the obligation of the trustee of the mortgage and bonds to collect and pay the bonds out of the rentals. If authority for this transaction exists, it is to be found in KRS 162.120 to 162.300. It is, as we have said, a question of power in the fiscal court, for the legality of such a self-liquidating scheme, and the authority of a board of education to enter into the contract of leasing has been settled by previous decisions.

The Kentucky Revised Statutes bring together what were originally the separate acts, above cited, pertaining to the financing by city, independent school districts and county boards of education of the erection or acquisition of school buildings and equipment by this method. In this comprehensive chapter, the word "city" is used also to mean "county" or other municipal corporation. KRS 162.300. No clear-cut distinction appears in this group of sections as between financing the erection of buildings by issuing bonds to cover the cost and by other means. Though complementary acts, the difference between Chapters 14 and 15, Acts of the 1934 extra session, relating to counties and county boards of education (pub-

lished as Sections 4421-20 to 4421-38, Kentucky Statutes) is shown in Franklin County v. Franklin County Board of Education, 267 Ky. 554, 102 S. W. (2d) 1024, 1025. It is therein pointed out that Chapter 15 gave the county the power necessary to carry out the project of acquiring school property for and on behalf of the board of education and that its intention was "to provide a method whereby funds might be obtained through the co-operation of the school board and the fiscal court." Comparable provisions for other than county boards of education were contained in Chapters 68 and 69, Acts of the 1934 regular session, published as Sections 4421-1, 4421-19, Kentucky Statutes. However, we are confined to the Kentucky Revised Statutes since all the proceedings in respect of which a declaration of rights has been sought herein arose after the statute became effective. See Fidelity & Columbia Trust Company v. Meeks, 294 Ky. 122, 171 S. W. (2d) 41. But it is proper to examine the historical setting of the provisions of those statutes to aid in their construction. The purpose of the original enactment was to enable the several boards of education to co-operate with the Federal government to make work for men out of employment and at the same time to enable the boards to receive cash contributions and borrow money under the self-liquidating or revenue plan from the Federal agency known as the Public Works Administration. The immediate occasion or specific purpose of legislation is not always controlling in the interpretation of a statute, for in an act conferring authority the question is the extent of the authority conferred and the ultimate or broad purpose of the enactment. Often the precise conditions have disappeared and the purpose of the law must of necessity be held adaptable to changed conditions, perhaps unforeseen or unimagined, if the object to be accomplished exists and the accomplishment of that object is the primary intent of the act. If procedural provisions of a statute are merely to achieve its end and purpose, they will be deemed directory only and other means may be held legal to reach the objective. Ewing v. Union Central Bank, 254 Ky. 623, 72 S. W. (2d) 4; Skaggs v. Fyffe, 266 Ky. 337, 98 S. W. (2d) 884. As aptly said by the appellees: "When our Federal Constitution gave to Congress the power to regulate commerce, the purpose or occasion for that provision was to permit the wagons and flatboats to cross state lines without in-

terference. But the powers thereby granted have been applied to occasions and instrumentalities like the airplane and radio, which could not have been intended."

So it was said in Van Hooser & Company v. University of Kentucky, 262 Ky. 581, 90 S. W. (2d) 1029, 1030, in constructing a statute with similar provisions, that the institution "may borrow money from the Public Works Administration or other agency of the Federal Government and issue negotiable bonds" therefor did not prohibit obtaining the money from some other source. This was based upon the conclusion that:

> "The primary purpose of the act is to enable state educational institutions to erect buildings and to pay for them with bonds payable out of the revenues derived from the buildings. Viewing the act as a whole, it was clearly the intention of the Legislature to enable the governing bodies of such institutions to finance the construction of necessary buildings upon the best terms possible, and at the lowest rate of interest obtainable. The provision in section 2, relating to the borrowing of money from the Public Works Administration, is not mandatory."

It was accordingly held that the money could be obtained from private individuals and bonds could be issued to them therefor. This was followed in Piggott v. Kasey, 271 Ky. 651, 113 S. W. (2d) 5, involving bonds issued under the statutory plan by a town of the sixth class for its independent school district whose limits had been taken in the county school district after the arrangements had been made for the project. If more specific authority should be desired, it would seem to exist in the provision of KRS 162.180, a part of the statute particularly involved in this case, namely, "the bonds shall be sold in such manner and upon such terms as the governing body of the city deems for the best interest of the city." Time and events have justified this interpretation, for, as is well known, the Federal Public Works Administration had ceased to function even by the time the Revised Statutes containing the provision became effective, October 1, 1942, while the need for improved school facilities will remain with us.

It is the same kind of question that has arisen in this case, viz., one of the extent of the powers conferred by

the statute. It is whether the statute is broad enough to authorize the acquisition of school property on which the buildings have already been erected and the issuance of bonds of the same character in payment, or, strictly speaking, in substitution thereof. Bearing in mind the general purpose of the enabling act, we examine the terms of the statute to ascertain whether the transfer of title and substitution of bonds can be said to be within the intention of the Legislature or whether that body in expressing its intention made the statute so restrictive that it cannot be done.

The county was authorized to *"establish* and erect" buildings and appurtenances "for the purpose of *supplying* the board of education * * * with adequate buildings necessary to carry out its duties and powers." KRS 162.150. That is the primary and real purpose of the entire authority. The power was granted the county as a municipal corporation to borrow money and issue the bonds "for the purpose of defraying the cost of constructing *or acquiring* any school buildings and appurtenances thereto." KRS 162.170. It is prescribed by that section that the ordinance or resolution of the governing body relating to the matter shall provide that such properties "are to be constructed *or acquired*" under the provisions of KRS 162.150 to 162.280. Several of those sections speak not only of the erection of school buildings but in the alternative to their "establishment" or their "acquisition," or to "obtain" them. The word "establish" is apt in the sense of to create or originate in some way other than to build or erect in the manner specifically declared. The word "acquire" is comprehensive and includes the meaning of "to gain by any means; to get as one's own," and is synonymous with to obtain and to procure. Webster's International Dictionary.

The development of this plan of financing public properties has been from private corporations acting as holding companies to municipal corporations under statutory sanction. As said in Franklin County v. Franklin County Board of Education, supra [267 Ky. 554, 102 S. W. (2d) 1025], the original act did "nothing more than give the county the power necessary to carry out the project on behalf of the board of education." And if it is sound reasoning, and we think it is, to say that the statute does not exclude the right of such municipal

corporation to issue bonds and get the money from private financial institutions instead of the Public Works Administration, specifically named, we are upon sure ground in saying that the exercise of the authority is not confined to the immediate erection of the buildings. We can see no difference between exercising it as soon as the buildings have been erected and exercising it a few years afterward. That the power is not lost or exhausted initially is reflected in the authority to issue refunding bonds in accordance with the procedure prescribed for the original bonds. KRS 162.260.

The judgment so declares the powers and rights. It also declares that several buildings or properties may be included in one mortgage and one issue of bonds as at present. This is in accord with the ruling in Scott County Board of Education v. McMillen, supra. The judgment also declares that the bonds may be exchanged at par, with no higher rate of interest, and the re-financing done upon other terms as favorable to the board of education as the present arrangement, including the elimination of the provision by which the school board as lessee assumed liability for the refund of taxes which might have to be paid by the holders of the bonds under certain circumstances. It declares that if such exchange is not accomplished the bonds may be sold at public sale after due advertisement, and the proceeds used to pay and retire outstanding bonds of the holding company which may have matured or may be called for payment. We concur in these declarations, but do not deem it well to pass upon other questions.

The judgment is affirmed.

Whole Court sitting.