## Cole v. McCracken County.

June 16, 1944.

William H. Crutcher, Jr., and Woodward, Dawson & Hobson for appellant.

John E. Kirksey for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

This is a friendly action instituted under sec. 639a—1 et seq. of the Civil Code of Practice to test the validity of a bond issue by McCracken County. The question for decision is, do $192,000 refinancing bonds proposed to be issued by the County to pay its part of the cost of building a new court house at Paducah constitute an indebtedness of the County? If so, they exceed, as we gather from the record and briefs, the limit of indebtedness which the County may incur under secs. 157 and 158 of the Constitution. The chancellor adjudged that the bonds were payable solely from the revenue to be derived from the renting of the court house and validated the issue.

There is no contrariety of facts and the question for solution is solely one of law. The pleadings show that prior to 1940 it was necessary for the County to build a new court house at a cost of slightly above $300,000, of which the Works Progress Administration furnished $114,919 and the County raised the remaining $200,000 by conveying its court house to the McCracken County Court House Corporation (formed for this particular purpose) which issued $200,000 of 3¾% bonds maturing over a period of 20 years. The bonds are secured by a mortgage on the court house and payable from $15,500 annual rental the Corporation received from a one year lease on the court house to the County, the latter having an option to renew the lease from year to year and to purchase the property by satisfying the bonds in full. This method of financing the County's building program follows the plan this court approved

in Sizemore v. Clay County, 268 Ky. 712, 105 S. W. 2d 841, and is customarily called the "holding company plan."

Before the original bonds were issued the Treasury Department of the United States had ruled that the interest received by the holders of these bonds was not subject to federal income tax. To lower the interest rate and to obtain an advantageous market for the bonds a provision was inserted in them that if the interest received therefrom should be taxed by the United States, or the Commonwealth of Kentucky, the Court House Corporation would reimburse the bondholder in the amount of taxes paid, and in turn the County would reimburse the corporation.

The Treasury Department changed its ruling and held that the interest received from the bonds was subject to federal income tax. In order to escape the consequences of that ruling, which would cost it a material sum, the County undertook to refinance these bonds by changing the issue from that of a private corporation to that of a municipal corporation.

The refinancing plan now before us is, that on February 15, 1944, the McCracken Court House Corporation, joined by the County, conveyed the court house property to the Peoples National Bank of Paducah as trustee to hold for the use and benefit of the owners of the new bonds to be issued by the County. Of the original $200,000 issued by the private corporation, $192,000 of those bonds remain unpaid and the holders thereof have agreed to surrender them and accept the new bonds to be issued by the County bearing the same rate of interest and maturities as the surrendered bonds.

The new bonds to be issued by the County contain its promise to pay, as do the attached coupons, but the bonds, as well as the order of the fiscal court authorizing the issue, recite they do not constitute an indebtedness of McCracken County within the meaning of the Constitution "and are payable solely and only as set out hereinafter." The bonds then recite that the bank holds title to the property as trustee for the bondholders and that it has rented same to the County for a term of one year, with an option to renew the lease from year to year, for an annual rental of $15,500 which will be used for the payment of the bonds and interest.

It is admitted there is no statute authorizing the County to issue what are known as "revenue bonds" whereby only the revenue of certain property is pledged and the bonds do not become the obligation of the municipality issuing them. Had there been an act of the Legislature authorizing counties to issue "revenue bonds" against court houses in which it was provided that the county incurred no obligation by reason thereof and the bonds were to be retired solely from the revenue the county received from the rent of the court house (assuming it capable of producing revenue for the county if the county had not parted title therewith), we would have no trouble approving the issue. It would then fall under the bridge and waterworks cases. But the difficulties here faced by the County are twofold: First, there is no legislative act authorizing it to issue such bonds; and secondly, it is difficult to conceive how the County can secure revenue from the court house after parting title with it.

The Municipal Bridge at Louisville was built under an Act of 1928, KS sec. 3037L-1 et seq. (now included in KRS Chapter 181), which provides that the bonds shall be satisfied solely from the bridge tolls and shall not be obligations of the city. In Klein v. City of Louisville, 224 Ky. 624, 6 S. W. 2d 1104, the Act was upheld and it was said that the bonds were not obligations of the city. Under a similar Act also passed in 1928, KS sec. 4356s-4 (now included in KRS Chapter 180), the Highway Commission was authorized to issue bridge bonds payable solely from the tolls received and it was expressly provided that they were not obligations of the Commonwealth. In Bloxton v. State Highway Commission, 225 Ky. 324, 8 S. W. 2d 392, that Act was declared constitutional and it was said that the bondholders must look to the tolls and the bonds were not obligations of the Commonwealth.

The Klein opinion points out that the Act, itself, and the bonds both specified there was no obligation on the city, and the bridge tolls are the sole security behind the bonds. This branch of the Klein opinion is largely based upon City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004, where the Legislature authorized cities of the second, third and fourth class to bond their waterworks without the bonds becoming the obligation of the city and requiring the bondholders to look solely to the income from the water plant to satisfy their paper.

Attention is called in the Bowling Green case to the fact that the bonds are amply secured due to the obligation the Act places on the city to charge rates which are sufficiently above operating expenses to meet the bonds as they mature; and in the event of default, the bondholders may by mandamus require this to be done or they may cause a receiver to be appointed with power to collect and apply sufficient rates to satisfy the bonds. The opinion says that the city in operating its water plant is engaged in private business and had authority without the Act of 1926 (KS sec. 2741L-5, now KRS 96.390) to issue the bonds. But in the instant case the County was acting in its governmental capacity which distinguishes it from the Bowling Green case.

Appellant and appellee both insist that the issue should be approved under the opinions in Sizemore v. Clay County, 268 Ky. 712, 105 S. W. 2d 841; Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S. W. 498; Bellamy v. Board of Education of Ohio County, 255 Ky. 447, 74 S. W. 2d 920, and other cognate cases; and Morgan v. Fayette County Board of Education, 294 Ky. 597, 172 S. W. 2d 64. None of these authorities sanction the bonds under consideration.

In the Sizemore case, 268 Ky. 712, 105 S. W. 2d 841, the county conveyed the court house property as authorized by KS sec. 927, now KRS 67.080, to a private corporation and the latter mortgaged same to secure bonds which it, *not the county,* issued to obtain funds with which to erect a new court house. The corporation then leased the building to the county from year to year and pledged the rent received to retire the bonds. The bonds were not issued by the county and this procedure followed what is commonly called the ''holding company plan,'' which this court has approved many times and under which the original bonds were issued by the McCracken County Court House Corporation. It was under this plan that the bonds were issued in the Waller case, 209 Ky. 726, 273 S. W. 498 and the Bellamy case, 255 Ky. 447, 74 S. W. 2d 920.

The Morgan opinion, 294 Ky. 597, 172 S. W. 2d 64, upheld a statute authorizing a school board to convey its property to Fayette County for the purpose of issuing bonds under this ''holding company plan'' as provided by KRS 162.120 et seq. It was there written that the broad purpose of a statute is adaptable to changing

conditions and that it was not the legislative intent to limit corporations to the Works Progress Administration in obtaining money on such bonds, but that the funds might be obtained from a private financial institution. The statute recites that the bonds shall be payable solely from the rent and shall not be an indebtedness of the municipality.

There is a vast distinction between the bonds issued in the Sizemore case, 268 Ky. 712, 105 S. W. 2d 841, and the issue we are now asked to approve. There, the bonds were issued by the holding corporation and not by the county as here. There, the holding corporation agreed to pay the bonds from rents it was to receive and the bonds were its obligation. Here, the County agrees to pay the bonds and although the bonds recite payment is to be made from rent, the County receives no rent on the building but is paying rent for the use thereof. The County cannot blow both hot and cold. It cannot claim in one breath that the bonds are issued by it and thereby have them escape federal income tax, and in the next breath proclaim the bonds are not obligations of the County and will be satisfied by rent the County pays to the trustee which did not sign the bonds. The bonds are either horse or ass, they cannot be the hybrid mule.

Perhaps this court promulgated an unsound rule as pointed out in a vigorous dissent in the Scott County case, 270 Ky. 483, 109 S. W. 2d 1201, 1204, 1205, where it was written: "The plan, (holding company plan) after all, is but a detour around that which was unlawful before the plan was declared." But since our earlier opinions on the subject were written the "holding company plan" has received legislative sanction, and while we neither have the power nor the inclination to change that rule, we will not extend it and say that without an act of the Legislature a county may issue bonds and agree to pay them out of rent it does not receive (but pays to a trustee to whom it has conveyed the property and who does not sign the bonds), without such bonds becoming the obligation of the county. Had the Legislature desired to give counties such extraordinary power, it is reasonable to assume it would have done so when it enabled school boards to convey their property to municipal corporations for the purpose of issuing bonds as is provided in KRS Chapter 162.

The bonds which the County proposes to issue are void because they have not been approved by the County Debt Commission as required by KRS 66.310. County Debt Commission v. Morgan County, 279 Ky. 476, 130 S. W. 2d 779. While the record before us does not show that the indebtedness of McCracken County, together with this bond issue, is in excess of one-half of one per cent of the value of the taxable property therein, yet we may reasonably infer that it is, else the County would not have conveyed the court house to the corporation for it to issue the original bonds which the present proposed bonds are to refinance.

The greater part of this record consists of an exhibit containing about 30 pages which is a carbon copy made on thin paper. This is in violation of rule 3, subsection 2, of this court. We would have condemned this record and have refused to consider same in its present condition but for the fact that this is an important case to McCracken County and such action upon our part very likely would have prevented a decision before the summer adjournment.

The judgment is reversed with directions that one be entered dismissing the petition.

Whole Court sitting.