The CHIEF FREIGHT LINES COMPANY, a corporation, Appellant,

v.

INDUSTRIAL COMMISSION of Missouri, DIVISION OF EMPLOYMENT SECURITY, Respondent.

No. 23558.

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1963.

Tom B. Kretsinger, James A. Broaddus, Kretsinger & Kretsinger, Kansas City, for appellant.

George Schwartz, Jefferson City, for Division of Employment Security, Jefferson City, for respondent.

CROSS, Judge.

This is an appeal by The Chief Freight Lines Company, a corporate common carrier of freight by motor truck, from a judg-

ment of the Cole County Circuit Court affirming a decision of the Industrial Commission to the effect that appellant had acquired substantially all of the business of the Kansas Nebraska Express (a corporate common carrier of like nature), and that appellant therefore, stood in the position of Kansas Nebraska Express in all respects, under the provisions of Section 288.110 V.A.M.S., as to liability for employment security taxes and contributions.

At all times relevant to this case, both appellant and Kansas Nebraska Express (hereinafter referred to as KNX) were interstate common carriers of motor freight under respective certificates of convenience and necessity granted to them by the Interstate Commerce Commission, and were subject to the laws of the United States regulating interstate motor carriers. Likewise, both carriers were subject to the provisions of the Missouri State Employment Security Law.

Prior to November 1, 1958, and at a time when KNX was in poor financial condition, it was agreed by appellant and KNX that the former would "take over the assets and liabilities" of KNX, upon approval by the Interstate Commerce Commission, and that the assumption of those assets and liabilities would be the "purchase price for the company" (KNX). On or about November 1, 1958, appellant applied to the Interstate Commerce Commission for approval of the described sale agreement. During the pendency of that application, the appellant was granted temporary authority to operate as an interstate carrier under the certificate of public convenience and necessity then held by KNX, and pursuant to a lease agreement by the terms of which appellant paid KNX rentals in the sum of $400 per month.

On January 2, 1959, KNX ceased operations and turned over substantially all of its physical properties and facilities to appellant. Thereupon, appellant commenced operating between interstate points under KNX's certificate and established a terminal in Omaha, Nebraska, equipping it with office furniture received from KNX. Appellant also utilized certain vehicles KNX had formerly used. The president of KNX and an office employee, a salesman, two city pickup men and three road drivers, all formerly employed by KNX, went to work immediately for appellant. Only one of KNX's employees was not immediately employed by appellant. He was, however, hired by appellant three or four months later.

On May 5, 1960, the Interstate Commerce Commission entered an order denying its approval of the sale agreement and requiring appellant to cease operating under the temporary authority on or before June 5, 1960. On the latter date appellant complied with the order, after having continuously operated the business of KNX, in the manner above described, from and after January 2, 1959.

■ On the basis of the foregoing facts, it was held, in the first instance, by a deputy for the Division of Employment Security, that appellant "acquired substantially all of the business of Kansas Nebraska Express, a corporation, and, therefore, that The Chief Freight Lines Company stood in the position of Kansas Nebraska Express in all respects under the provisions of Section 288.110 R.S.Mo.Supp." On appeal, the foregoing administrative determination was affirmed by the Appeals Referee of the Division of Employment Security. The decision of the referee contains findings of fact essentially as we have noted above and states the following conclusions of law:

"The Missouri Employment Security Law, Section 288.110 RSMo.Supp., provides in part as follows:

"'Any individual, type of organization or employing unit which has acquired substantially all of the business of an employer, excepting in any such case any assets retained by such employer incident to the liquidation of his obligations, and in respect to which the division finds

that immediately after such change such business of the predecessor employer is continued without interruption solely by the successor, shall stand in the position of such predecessor employer in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalties * * *'.

"The appellant contends that it is not a successor to Kansas Nebraska Express because it did not buy the assets of Kansas Nebraska Express but only used certain equipment of the company temporarily under a rental agreement. "To 'acquire' means to gain by any means. The Law does not distinguish between a permanent and a temporary acquisition of a business. The term 'business' means a commercial or industrial enterprise. It refers primarily to the activities, processes or transactions which make up a commercial or industrial enterprise rather than the physical assets which may be used in the enterprise. (See also Union-May Stern Co. v. Industrial Commission, et al. [Mo.App.], 273 S.W.2d 766.)

"The evidence shows that prior to January 2, 1959, the business of Kansas Nebraska Express, an employer subject to the Missouri Employment Security Law, was that of a common carrier of motor freight operating under an I.C.C. Certificate of Convenience and Necessity between Kansas City, Missouri and Omaha, Nebraska, and to other points in northeast Kansas. Although Kansas Nebraska Express retained ownership of its physical assets, the appellant on and after January 2, 1959, under a rental agreement with Kansas Nebraska Express and with the permission of I.C.C. to operate temporarily under the Certificate of Kansas Nebraska Express, engaged in the business of a common carrier

of motor freight in the same territory formerly served by Kansas Nebraska Express, used the same equipment formerly used by Kansas Nebraska Express, and employed all but one of the same employees employed by Kansas Nebraska Express. In so doing it acquired and continued the business of Kansas Nebraska Express, an employer subject to the Missouri Employment Security Law.

"By applying the Law to the facts as found, the Referee holds that as of January 2, 1959 the appellant, The Chief Freight Lines Company, a corporation, stands in the position of Kansas Nebraska Express in all respects under the provisions of Section 288.-110 quoted above."

The Industrial Commission denied appellant's application for a review of the decision by the appeals referee, which, however, is deemed to be the decision of the Industrial Commission for purposes of judicial review. Section 288.200 V.A.M.S. As heretofore stated, the circuit court affirmed that decision on review. Thereafter, this appeal was duly perfected.

There is no dispute as to the evidence and there is no contention that the evidence does not support the appeals referee's findings of fact. Appellant admits that "The facts in the case are clear". The question presented here is one of law. It is appellant's sole contention that the circuit court erred in sustaining the appeals referee's determination that under the evidence appellant acquired the business of KNX within the meaning of the Missouri Employment Security Law and thereby became liable for amounts owed to the employment security fund by KNX prior to November 1, 1958. It is appellant's position that "The evidence and facts show that appellant made an unsuccessful attempt to acquire seller's operating authority and that appellant acted in the capacity of a receiver or conservator in operating the certificate of the seller, which capacity is not the

equivalent of a successor within the meaning of Missouri State Employment Law". Appellant simplifies its single point by suggesting that "the sole question to be decided is the meaning of the word 'acquire' ".

It is conceded by appellant that it took over the operation of the interstate business of KNX under an agreement to purchase, under a temporary rental agreement, and under a temporary operating authority granted by the Interstate Commerce Commission, and that it (appellant) so operated such business for 1½ years, all for a money consideration of $400.00 per month. In so doing, appellant used and enjoyed not only the certificate authority held by KNX, together with KNX's identity as a going business—but also actually utilized the vehicles and physical equipment owned by KNX, and hired all of KNX's former employees. For all practical purposes, throughout the year and a half, appellant had been the *beneficial* owner of the business, with actual possession of it, and with unrestricted right to manage and control it, limited only by the duty to preserve the property, and to render service to the public. As the operator of the business it was appellant's privilege to hire and discharge employees as it saw fit, and to set their wages. Appellant was obligated to pay the wages and salaries of those employees and all expenses and charges arising from the business operations. Correspondingly, it was appellant's entitlement to collect and retain all revenue of the business.

Notwithstanding all the foregoing, appellant insists that we must hold that it "acquired nothing" in respect of the business of KNX. On the contrary, appellant says, it occupied merely the position of a receiver, or a conservator, to conserve the properties of KNX, and to protect the public's interest, for the period of a year and a half during which the application to purchase was under consideration by the Interstate Commerce Commission, *because that agency ultimately denied the application.* In effect, it is appellant's contention that the

acquisition required by Section 288.110 V.A. M.S. is limited, in the present case, to a transfer of the properties of a motor carrier as *finally approved and consummated* under provisions of the Interstate Commerce Act, to-wit: 49 U.S.C.A. § 310a(b), which reads in part as follows:

"Pending the determination of an application filed with the Commission for approval of * * * a purchase, lease, or contract to operate the properties of one or more motor carriers, the Commission may, in its discretion * * * grant temporary approval, for a period not exceeding one hundred and eighty days, of the operation of the motor carrier properties sought to be acquired by the person proposing in such pending application to acquire such properties, * * *".

Appellant predicates its present contention on the clause "sought to acquired by the person proposing in such pending application to acquire such properties", as contained in the above quoted text of the statute. It is argued by appellant that by using the words "sought to be acquired" and the words "proposing" and "pending" (with reference to the word "acquire"), Congress intended that the temporary authority permitted under the statute "be something less than an acquisition".

■ We are not persuaded by the foregoing argument that the federal statute has any substantial bearing on the meaning of the word "acquire", as used in Section 288.110. We are concerned with the intention of Missouri's legislature in enacting that statute—not the intention of Congress in the enactment of the laws regulating interstate commerce. Those federal statutes are not in pari materia with the provisions of Missouri's State Employment Security Law. See Alabama Department of Industrial Relations v. Drummond, 30 Ala.App. 78, 1 So.2d 395, cert. den., 241 Ala. 142, 1 So.2d 402, wherein it was held that a definition of "labor dispute" contained in the federal Norris-LaGuardia Act

was not determinative of the meaning of that term as used in Alabama's unemployment insurance law. Our interpretation of Section 288.110 will be governed by substantive law applicable to it.

■ As a preliminary determination, we hold that appellant was not, in any sense, a receiver or conservator of the business of KNX. It is quite clear from all the facts that appellant operated the business as a lessee, with all the rights, privileges and duties that accompany ownership. To that extent, appellant had an interest in the business property concerned.

The word "acquire" is one of very broad meaning. It is so conceded by appellant. In Morgan v. Fayette County Board of Education, 294 Ky. 597, 172 S.W.2d 64, the court stated, "The word 'acquire' is comprehensive and includes the meaning of 'to gain by any means; to get as one's own,' and is synonymous with to obtain and to procure. Webster's International Dictionary". It is significantly stated in Black's Law Dictionary, "It (the word 'acquire') does not necessarily mean that title has passed. Godwin v. Tuttle, 70 Or. 424, 141 P. 1120, 1122".

There is no Missouri case which construes the term "acquire" as it is used in the statutory provision here involved. However, both appellant and respondent have cited a Massachusetts case which has significant bearing on the instant question—Sea Crest Hotel, Inc. v. Director of Division of Employment Security, 330 Mass. 226, 112 N.E.2d 813. In that case the issue decided was whether a corporation, which had obtained, *under a lease*, substantially all of the assets of an investment company which operated a hotel and was a contributing employer, had "acquired" such assets within the meaning of a provision of the Massachusetts Employment Security Law. In affirmatively deciding the question, the court stated:

"We infer, as did the judge below, that substantially all of the assets of the investment company passed into the petitioner's control under the lease. The petitioner does not contend the contrary. The question therefore narrows down to whether one who obtains under a lease of the sort here involved substantially all of the assets of an employing unit can be said to have 'acquired' these assets within the meaning of section 8(d). The contention of the petitioner is that the word 'acquired' as used in this section refers to absolute ownership and to no lesser interest. We do not agree. The case of Commissioner of Insurance v. Broad Street Mutual Casualty Ins. Co., 312 Mass. 261, 44 N.E.2d 683, 143 A.L.R. 982, is relied on as supporting this position. While it is true that the opinion in that case states, 312 Mass. at page 263, 44 N.E.2d at page 684, that 'The word "acquire" imports ownership, and is not satisfied by the mere custody or control that a receiver has', it cannot be taken to have limited scope of section 8(d) to the extent here urged. Properly construed the language of the court in that case goes no further than to differentiate between the custody of a receiver and the requirement of section 8(d) that the successor employer obtain a real, beneficial interest, as distinct from a purely formal one, in the business, organization, or assets of his predecessor.

"The facts involved in the Broad Street case differ materially from those before us. There a receiver had been appointed for the purpose of liquidating the company, and not to continue its business. The receiver's interest in the assets of the company was the custody or control necessary to the process of liquidation. In contrast, the interest taken by the petitioner in this case, while not a fee simple, was one of substance. The petitioner was authorized to continue the business formerly conducted on the premises by the in-

vestment company for a period of seven years.

\*   \*   \*   \*   \*   \*

"To own property one does not necessarily have to have an estate in fee simple. One having a lesser estate may be said to have ownership of a sort. See Restatement: Property, § 10, comment c; Tiffany, Real Property, 3d Ed., § 2; Baltimore & Ohio Railroad v. Walker, 45 Ohio St. 577, 16 N.E. 475; Weinberg v. Baltimore & Annapolis Railroad, Md., 88 A.2d 575. It is not straining the concept of ownership unduly to say that a lessee 'owns' an interest in the subject matter of the lease and that when the lease is executed he has 'acquired' that interest. We are of opinion, therefore, that the ruling of the judge that 'as a matter of law the petitioner had not "acquired" anything mentioned in § 8(d) of the act' was error".

Other than Sea Crest, appellant cites one additional case—Commissioner of Insurance v. Broad Street Mutual Casualty Ins. Co., 312 Mass. 261, 44 N.E.2d 683, 143 A.L.R. 982. It is apparent from the quoted text of Sea Crest that Broad Street has no application to the case before us. As we have shown, the instant appellant obtained possession of the business not as a receiver, but for the purpose of continuing it as owner, whereas, in Broad Street, the receiver took possession of the company's assets for purposes of liquidation.

Without citing authority, appellant attempts to support its contention by further suggesting that the imposition upon it of liability for taxes and contribution under Section 288.110 would constitute a burden on interstate commerce. We find no merit in that suggestion.

It is our conclusion, as a matter of law, that appellant acquired substantially all the business of its predecessor, KNX, and continuously and solely operated the same during the period of time in question.

Therefore, it must be ruled that as of January 2, 1959, appellant stands in the position of KNX in all respects under the provisions of Section 288.110 V.A.M.S.

Accordingly, the judgment of the circuit court is affirmed.

HUNTER, J., concurs.

BROADDUS, P. J., not participating.