CASE 59.—MANDAMUS BY THE COMMONWEALTH FOR THE
USE AND BENEFIT OF THE LOUISVILLE SCHOOL
BOARD.—June 18, 1909.

# City Louisville v. Commonwealth for School Board

Appeal from Jefferson Circuit Court (Chancery
Branch, First Division.)

SHACKELFORD MILLER, Judge.

Judgment for relator and respondent appeals.—Affirmed.

1.   Statutes—Special Legislation—Imposition of Taxes.—The
     maintainance of a public school being a public duty of the
     state, and not purely a municipal purpose, Act March 24,
     1908· (Laws 1908 p. 156, c. 61), requiring a minimum school tax
     rate of 36 cents for cities of the second class, was not in vio-
     lation of Const. Sec. 181, providing that the General Assembly
     shall not impose taxes for the purpose of any municipal cor-
     poration, but may by general laws confer on the proper au-
     thorities thereof power to assess and collect taxes.
2.   Schools and School Districts—City Schools—Status—"Officers
     of the State."—The schools of a city, including high schools,
     are a part of the state's school system, and their trustees are
     "officers of the state."
3.   Statutes—Local and Special Acts—Taxation.—Laws 1908, p.
     156, c. 61, providing a minimum school tax rate of 36 cents
     for cities of the second class, is not in violation of Const.
     Sec. 59, subsec. 15, prohibiting the passage of local or special
     acts to authorize or regulate taxation.
4.   Statutes—Special Legislation—Classification—Population.—
     For purposes of legislation, cities may be classified accord-
     ing to population, though a class may embrace but one city.
5.   Taxation—School Taxes—Uniformity.—Laws 1908, p. 156, c.
     61, requiring a minimum school tax rate in the cities of the
     second class of 36 cents does not violate Const. Sec. 181, re-
     quiring that taxes shall be uniform and assessed against the

City Louisville v. Commonwealth, for School Board.

property within the territorial limits of the authority assessing the tax, since the city and not the state, must be regarded as the agency assessing the tax; the tax being uniform as to the city.

6. Municipal Corporations—Legislative Control—Local Self-Government—Taxation.—Laws 1908, p. 156, c. 61, requiring a minimum school tax rate in cities of the second class, is not unconstitutional as a violation of the spirit of local self-government.

CLAYTON B. BLAKEY, Attorney for City of Louisville.

1. The Legislature can neither impose taxes in the City of Louisville by a special act, nor by a special act require the city to impose such taxes.

2. All taxes imposed by the Legislature must be uniform on all property in the State.

3. The system of common schools provided for by the Constitution, was intended to be general, governed and aided in all parts of the State in the same way and to the same extent. Auditor v. Holland, 14 Bush 151.

## POINTS AND AUTHORITIES.

1. The act in question is in violation of Section 181 of the Constitution. Kentucky Constitution, Section 181; Kentucky Constitution, Section 59, Sub-section 15; Griswold v. Hepburn, 2 Duvall 20; Maydwell v. City of Louisville, 116 Ky. 885; Macklin v. Trustees of Common School District, 88 Ky. 596; Cooley on Taxation, page 547; Cooley on Taxation, page 548; Cooley on Taxation, page 1319; Cooley on Taxation, page 1321; McDonald v. City of Louisville, 68 S. W. 413; City of Lexington v. Thompson, 68 S. W. 477; McCabe v. Carpenter, 102 Cal. 469; San Francisco v. Insurance Companies, 74 Cal. 113; State v. City of St. Louis, 115 S. W. 534.

2. The act in question contravenes section 171 of the Constitution. Kentucky Constitution, Section 171; McCabe v. Carpenter, 102 Cal. 469; Cooley on Taxation, page 584; O' Donnell v. Bailey, 34 Miss. 388; Haywood v. The Mayor, 12 Ga. 404; Harrodsburg v. Renfro, 58 S. W. 795; Kentucky Constitution, Section 220; Hager v. Walker, 107 S. W. 205.

3. The act in question contravenes section 183 of the Kentucky Constitution. Kentucky Constitution, Sec. 183; State v. Ogan, 63 N. E. 227; 159 Ind. 119; Peay v. Talbot, 39 Tex. 335; Thomas v. Austin, 30 S. E. 627, 103 Ga. 701; Words and Phrases,

City Louisville v. Commonwealth, for School Board.

Vol. 8, page 6844; Words and Phrases, Vol. 8, page 6969; Auditor v. Holland, 14 Bush 151; Robinson v. Schenck, 102 Ind. 307.

4. No levy can be required under the act until the fiscal year beginning September 1, 1909. Section 2969, Kentucky Statutes; Former Charter of the City of Louisville; Kentucky Statutes, Section 452; Cooley on Taxation page 451.

LAFON ALLEN for appellee.

WALLACE McKAY and HOWARD B. LEE, of counsel.

POINTS DISCUSSED.

1. Popular education is a measure of self-preservation for a democracy.

2. The duty to maintain an efficient system of schools is imposed by the present, as by former Constitutions, upon the State.

3. An "efficient system of schools" is a system of efficient schools, each school or group of schools being "efficient" for the needs of the community it serves.

4. This solemn, public trust must be administered by the Legislature, the great repository of governmental power.

5. The imposition of that duty implies a gift of power for its effective discharge; power to adopt all fair and reasonable expedients for the advancement of learning in every part of the State, expedients as diversified as the needs of the diverse communities to be served, involving the employment of both general and local agencies and the imposition of burdens in such places and such measures as, in its judgment, is dictated by a fair relation to needs and benefits.

6. The General Council of Louisville are "ex-officio" common school officers of the State and are subject to its control in matters affecting the schools. In levying a school tax they act for the State; and such a tax is not one imposed for a local purpose, within the meaning of Section 181 of the Constitution.

7. The requirment of a minimum levy for school purposes in Louisville does not violate Section 171 of the Constitution, requiring uniformity of taxation.

8. Such a requirement is reasonable and just provision for an "efficient system" of schools and secures a real "uniformity" of correlation between needs and facilities. Any more literal uniformity is valueless for any purpose and would be destructive of a genuine "efficiency."

9. The Act of March 24, 1908, is a legitimate and necessary exercise of the power of the Legislature to discharge its duty in the matter of public education.

10. The effect of that act is to require the General Council of the City of Louisville to include a school tax of 36 cents in its levy for the 1909 tax.

11. "Essentially and intrinsically the schools in which are educated and trained the children, who are to become the rulers of the Commonwealth, are matters of State, and not of local jurisdiction. In such matters the State is a unit and the Legislature the Source of Power."

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

By an act of the Legislature of 1908, approved March 24, 1908 (Acts 1908, p. 156, c. 61), the minimum levy of taxes for school purposes in cities of the first class was fixed at 36 cents on the $100. This appeal involves the constitutionality of that act.

The question arises out of these facts: The Louisville School Board, an administrative agency created by the Legislature by the act of July 1, 1893 (Laws 1891-93, p. 1307, c. 244, Sec. 166), having control of the public schools of that city, presented to the general council of Louisville their budget for the schools for the year 1909, to defray which would require the levy of at least 36 cents on the $100 worth of taxable property within the city.

The general council refused to accede to the demand made upon it by the Board of Education, not because of any error in the estimate of that board, but solely because, so far as we can gather from the record, the council deemed it inexpedient to appropriate so much money for school purposes, in view of the other necessary expenses to which the city was put in maintaining its local government. Appellee brought this suit for the writ of mandamus against the city and its mayor and general council. The circuit court granted the writ. The defendants appeal.

The main feature of the question presented is: Is it competent for the Legislature to fix a minimum sum to be raised by a city for school purposes, and to require that sum to be raised without discretion? It is claimed by appellant that section 181 of the Constitution prohibits the legislative action. That section reads:

"The General Assembly shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may by general laws confer upon the proper authorities thereof respectively power to assess and collect such taxes." If the maintenance of a public school is a purely municipal purpose, then the section would seem to be conclusive of the matter. But education is not a subject pertaining alone, or pertaining essentially, to a municipal corporation. Whilst public education in this country is now deemed a public duty in every state, and since before the first federation was regarded as a proper public enterprise, it has never been looked upon as being at all a matter of local concern only. On the contrary, it is regarded as an essential to the preservation of liberty—as forming one of the first duties of a democratic government. The place assigned it in the deliberate judgment of the American people is scarcely second to any. If it is essentially a prerogative of sovereignty to raise troops in time of war, it is equally so to prepare each generation of youth to discharge the duties of citizenship in time of peace and war. Upon preparation of the youger generations for civic duties depends the perpetuity of this government. The power to levy taxes is an essential attribute of the sovereignty. That is so because the necessity of conducting the government requires that money be raised for the purpose by some

sort of taxation. So is the power to educate the youth of a state, to fit them so that the state may prosper; else the taxes raised could scarcely meet the demands made upon a government in these times. Whilst the power named is older in point of adoption as a legal maxim, the other is modernly found to be of no less importance. It may be doubted if the state could strip itself of either quality of its sovereignty. Certainly it will not be deemed to have attempted it upon language open to debate.

In this state the subject of public education has always been regarded and treated as a matter of state concern. In the last Constitution, as well as in the one preceding it, the most explicit care was evinced to promote public education as a duty of the state. Besides setting apart a very considerable capital sum as an inviolable asset of the school fund, the Constitution provides: "The General Assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the state." Const. Sec. 183.

In obedience to that requirement the General Assembly has provided a system of common schools, in connection with other branches of public education. The subject requires different provisions for localities differing in density of population. For rural settlements there is the district school. For villages and towns a more extended term may be had, including high schools, because the population makes it practical to do so. In cities a still more elaborate, and consequently more expensive system is set up. All have the one main essential—that they are free schools, open to all the children of proper school age residing in the locality, and affording, so long as the term lasts, equal opportunity for all to acquire the learn-

ing taught in the various common school branches. The school funds raised directly by the state for common school purposes are apportioned ratably among them all. In the cities the government of the public schools is committed to boards of education. Each city of certain classes, including the class to which Louisville belongs, is made a separate school district. Local taxation is provided for in every instance to supplement the fund paid to the district out of the state money. In some it is left to the option of the voters of the district; in others, to the discretion of the trustees; while in others it is left to the city council and board of education. But in none is the question left entirely to the locality whether a public school shall be maintained for it. Nor does the state take its hands off the control of the school system, by allowing, or by requiring, the different localities to take steps toward supplementing the general appropriation by local taxation. The school is none the less a state institution for that matter. If the public schools of Louisville were local affairs, over which that municipality had the sole control, it may be doubted if it would be competent for the state to levy a tax on its other citizens to help support them. But they are not municipal institutions at all. It was so held in City of Louisville v. Louisville School Board, 119 Ky. 574, 84 S. W. 729, 27 Ky. Law Rep. 211; Id., 32 S. W. 406, 17 Ky. Law Rep. 698; Bamberger Bloom & Co. v. City, 82 Ky. 337, 6 Ky. Law Rep. 258. The city schools, including high schools, are part of the state's common school system. Their trustees are officers of the state. Such is the effect of the decision of City of Henderson v. Lambert, 8 Bush, 610, and in Combs v. Bonnell, 109 S. W. 899, 33 Ky. Law Rep. 219.

Section 181 of the Constitution refers to matters municipal.  The state could as well have required the schools of Jefferson county, including Louisville, to have been under the supervision and control of the county fiscal court, and that body required to levy a fixed tax, or one between  minimum and maximum rates, as have left the tax rate with the city council. The section in question does not pertain to municipal affairs, nor does it  attempt to levy a tax therefor.  It is competent for the state to administer its government through such agencies as the Legislature may choose, when the Constitution does not expressly provide otherwise. In the establishment and maintenance of an efficient system of common schools, the Legislature was left a free hand as to the details of management and government, as well as the matter of levying taxes.  It was therefore competent for the Legislature to have laid all the taxes for that purpose  directly, or, as it did, to levy part directly and provide for the raising of the residue through other agencies which it established.  The cities of the commonwealth are agencies of government.  Unlike cities of old, the municipalities now partake but slightly of the nature of private corporations.  They are expressly prohibited from participating in commercial ventures not also governmental.  The state does in many matters use these agencies in executing government on behalf of the state at large.  There is perceived no reason why in the particular of schools these instrumentalities may not be employed to gather the taxes to be laid on their citizens and property, saving to the state, as well as to the taxpayers, the expense of employing additional officials to do what these are well qualified and prepared to do.  If the state can use them to collect its taxes, it may equally employ them

to assess the property and levy the necessary tax. The city councils are in frequent session. The State Legislature meets biennially. Conditions may arise —do arise—varying each year, and which call for special and local attention. City councils, not less than fiscal courts or boards of education, are peculiarly situated and qualified to exercise that discretion on behalf of the state called for by the varying conditions in the different cities and towns. The plan is simple of execution, is inexpensive, and brings the subject of local taxation to the attention of a common body of men selected for that purpose, who are thus given a better opportunity for knowing of the whole sum required to be raised in the municipality for needs that are local, so that the entire budget may be regulated on a known basis and system.

It is next insisted that the statute violates subsection 15 of section 59 of the Constitution, reading: "The General Assembly shall not pass local or special acts concerning any of the following subjects or for any of the following purposes, viz: * * * (15) To authorize or regulate the levy, the assessment or collection of taxes." Classification is a necessary feature and power of legislation, as it is impossible for any extensive code of laws to apply to every person or subject in the state. The Constitution itself provides for the classification of the cities and towns of the commonwealth. That fact alone establishes such classification as reasonable as to matters susceptible of treatment upon the basis of density and extent of population. The fact that only one city now belongs to the first class detracts nothing from the propriety of such allotment. Indeed, when the Constitution was adopted but one city could possibly have been included in the first class under the require-

ment as to population fixed by the Constitution—a fact known to the convention. Time and again this court has declared that subjects susceptible of classification according to population might be classified so as to apply only to cities of the first class, notwithstanding there was but one such, and that it did not violate the provisions of section 51 to do so.

Section 181 of the Constitution requires that taxes must be uniform and assessed against all property within the territorial limits of the authority levying the tax. It is argued for appellant that, if the Legislature is levying this tax, it is not uniform upon all property within its authority, and that the city can not be said to be levying the tax, because the city is left no discretion in the matter. Treated on its broader ground, we think the section was aimed to equalize the burden of taxation upon the subjects paying it and to be benefited by it. This section is held not to be infringed in levying street improvement taxes in cities upon only parts of the city, that property particularly benefited by the improvement, although the authority levying the tax was co-extensive with the city and covered considerable territory and property not affected by the tax. Gray's Limitation of the Taxing Power, Sec. 424 et seq.; Holzhauer v. Newport, 94 Ky. 407, 22 S. W. 752, 15 Ky. Law Rep. 188; Marshall v. Donoven, 10 Bush, 683; Smith v. Simmons, 110 S. W. 336, 33 Ky. Law Rep. 503, 129 Ky. 93.

But, if it be preferred to rest the matter upon the narrow ground—that is, whether the levy of the tax was made by the municipality—we think it can be done. The Legislature may and does provide for much of the state government through agencies such

as counties and cities. Maintaining the public high-
ways is a necessary function of state government.
Yet this state has set over that whole matter to two
local agencies. The counties, through their fiscal
courts, levy the taxes in the county outside the cities
for road purposes. The cities levy the taxes in the
territory within the city for the maintaining of the
city highways. The Legislature requires the tax to
be levied. This is a levy by the local tribunal. That
the city or county is mandatorially required to levy
a specific rate is not more objectionable as an in-
fringement of power than if they were simply re-
quired to levy at some rate in their discretion. If
the state can adopt an agency for carrying on some
part of the government, it may delegate to the agency
the power to do what is required of it. If it may dele-
gate discretionary power, it may likewise delegate
the power shown of the discretion, as the latter is less
than the former. It is not denied that the state can
limit the rate of taxation in all these matters as to the
maximum. So it can limit it as to the minimum. It
is wholly discretionary with the Legislature, where
the Constitution is silent upon the subject.

Finally, it is contended by appellant that the stat-
ute violates the spirit of local self-government which
pervades our system. Not so: If it did, then the re-
quirements of the Constitution that the Legislature
should establish and maintain an efficient system of
common schools was vain; for in that event all the
Legislature could do would be to advise the various
cities, towns and counties to maintain good schools.
A city has not, under the plea of home rule, the ex-
clusive right to do all within its territory that the
state can do outside. No case has gone that far; and

none could without destroying the autonomy of the state government.

Our conclusion is that the statute is a valid exercise of legislative power and discretion. The council should have levied at least the minimum rate fixed by the statute. Their refusal was a failure to obey an express requirement of law. The writ of mandamus was the proper remedy, and was correctly applied (Lexington v. Board of Education, 65 S. W. 827, 23 Ky. Law Rep. 1663), including for the year of 1909, which was manifestly intended to be embraced by the terms of the act.

Judgment affirmed.