## City of Louisville v. Manning et al.

March 22, 1949.

Gilbert Burnett and Alex P. Humphrey for appellant.

A. E. Funk, Attorney General, and W. Owen Keller, Assistant Attorney General for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Under a duly enacted ordinance appellant contracted for construction of certain streets, including sections adjacent to property used for common school purposes. Upon completion the proper authorities apportioned the cost, and assessments against the three lots of school property, totalling $6,600. Demand upon appellees for payment was refused. These facts are set up in a petition asking the court to direct appellees to pay. There is no complaint as to initial proceedings, the sole controversy arising over the construction and application of statutes relating to school properties and improvement of streets in cities of the first class.

Defendants demurred and upon submission the chancellor sustained the demurrer. Plaintiffs stood their ground, the court dismissing petition and granting appeal. There is no showing in the record of the reason for sustaining demurrer, but it is said in briefs that the court expressed the opinion that the statute relied upon by appellants was not intended or could not be construed to embrace common school property.

As giving authority to assess school property appellant cites us to Sec. 93.440, KRS which reads:

"(1) When any public way or other public improvement that may be lawfully constructed at the cost of the owners of lots adjacent to the improvement, * * * is ordered * * * to be constructed, the proportionate part of the cost * * * shall be apportioned against the real estate owned by the state or held in trust for the use of the state in like manner as against other lots.

"(2) The apportionment warrant shall be certified * * * to the Department of Finance, which shall draw a warrant on the State Treasurer for the amount of the apportionment warrant, in favor of the person entitled to payment."

The petition alleges that the city paid the contractor and took an assignment of the warrant. Appellant's contention is that Sec. 162.010, KRS, and opinions of this court relative to the status of school properties, removes all doubts as to its position. That section read in part: "The title to all property owned by a school district is vested in the Commonwealth for the benefit of the district board of education."

Appellant contending that all school property is owned or held in trust by the state for school purposes, asserts that the statute last above quoted is in keeping with judicial decisions prior to its enactment (School Code of 1934, Laws 1934, c 65) and quotes from Board of Education of Jefferson County v. Board of Education of City of Louisville, 1918, 182 Ky. 544, 206 S.W. 869, "Under our system, every common school in the state, * * * is a state institution, protected, controlled and regulated by the state. City of Louisville v. Board of Education, 154 Ky. 316, 157 S.W. 379; City of Louisville v. Commonwealth, 134 Ky. 488, 121 S.W. 411. All

public school property is held in trust for common school purposes, and all persons holding the title to such property are mere trustees * * * to control and manage the property so as to promote the efficiency of the common school system. Such trustees have no vested right to the property * * *.''

Appellant says the same theory of ownership and trusteeship has been followed when construing Sec. 162.010, KRS, for example, Bellamy v. Board of Education of Ohio County, 255 Ky. 447, 74 S.W.2d 920, 921, involving a conveyance of school property. The complaint was that the conveyance was by the local board, rather than by the Department of Public Property, to which state authority it was claimed the statutes had given title. The conclusion reached in that opinion does appear to adhere to former opinions in holding that the local board had the power to convey, although the title might be in the Commonwealth. We said: ''* * * although the title to school property is technically vested in the commonwealth, the broad powers to control, buy, and sell, specifically given to county boards of education by the same act, coupled with the provisions of chapter 14, Acts 1934, Ex.Sess. (Ky.St.Supp.1934, Secs. 4421-20 to 4421-23) conferring on county boards authority to convey real estate for school sites to the county for the purpose of qualifying for financial assistance from the federal government, evince a clear intention on the part of the Legislature to make county boards of education agencies of the state in the purchase, control, and sale of school property.''

The argument is that the title is in the state, and the property is held in trust by the state for school purposes, and that the assessment is valid under the latter part of Sec. 93.440, which as we note directs apportionment against ''real estate owned by the state or held in trust for the use of the state,'' and refers to the rule of statutory construction, citing Department of Revenue v. McIlvain, 302 Ky. 558, 195 S.W.2d 63, to the effect that in construing statutes, intent must be gathered from the language used. Applying this rule to the instant question, it may be determined without difficulty that school property is not held in trust ''for the use of the state;'' if there is any trust element, the holding is for the use and benefit of the school as a ''state institution,'' and that

is what the court meant in the case first above cited, decided at a time when "title" was taken by the local board of trustees.

The Bellamy case is contra to appellant's position. We said at the outset: "Indeed, it is conceded that the plan is valid, provided the county board of education has the power to convey a good title." We then pointed out that the argument of appellant was that since "title" was vested in the commonwealth, the State authorities should have conveyed. In answer we said: "If the statutes under consideration were all the statutes bearing on the subject, a more difficult question would be presented. That, however, is not the case." We then referred to the Act of 1934, and particular sections quoted, later embodied in full in Kentucky Statutes, and in the main carried into KRS, which declared each board of education to be a body politic, with power in its own name to sue, be sued, contract and to purchase, receive and hold property (KRS 160.160). Each board is given the power to contract for the purchase of property for school purposes, and in case of disagreement, to condemn, KRS 162.050. Other parts of the 1934 Act and statutes gave boards of independent districts the power to "convey real estate" for certain qualifying purposes.

Section 162.040 relates to property escheated to the state, the title to be vested in the state for the use and benefit of the schools, and provides that the board by proper officers may take possession of, or sue for and recover the property by proper action, and may, "sell and convey any of the property by warranty deed or otherwise." Sec. 162.310, KRS provides that for the purpose of providing buildings to be used in connection with any state educational institution "the governing body of the institution may convey to any person complying with KRS 162.320 and 162.330 a fee simple title * * * to real estate held by or for the institution." The sections referred to have to do with the plan of conveying to a third party, the property conveyed to be then leased by the grantee on the plan set up in those sections. In the many cases where that plan has been the subject of discussion, we find none in which it was sought to have the state convey, or where it was claimed that the state should convey, except the Bellamy case, supra. In that case we said that where there are apparently conflicting

statutes, it becomes the duty of the court to harmonize and not to adopt a construction that would lead to "absurd results," and concluding that title to school property was only technically in the state, held that "the county board [may] convey a good title."

We are not to be understood as saying that appellant's position, if upheld, would lead to "absurd results," but we very much doubt that the draftsman of the assessing statute, or the legislature in enacting it, intended it to, or that it should include abutting common school property, and while recognizing the rule of construction suggested by appellant, we have in mind another rule applicable to such statutes. While the apportionment assessment is not in the strict sense a tax, it is closely related, since the statute and ordinance provide a lien on the property in case of non-payment, and a sizeable penalty for delayed payment. This brings the case in the class in which the rule is that statutes of such character must in cases where there be any doubt, be construed favorably to the owner.

A slight study of the history of title and ownership of school properties will show that prior to the Act of 1934 (School Code) the title to school property was taken haphazard by local boards; in many instances with reversionary clauses; in other instances lands were abandoned; these situations leading to numerous law suits. A reference to KRS Annotations, Sec. 162.010 will demonstrate that the main purpose of that law was to assure in all cases a fee simple title in real estate used for school purposes, the "title" to be in the commonwealth, for the use and benefit of the school district, the real ownership being in the local authorities. We have no difficulty in concluding that Sec. 93.440, KRS does not apply to common school property, but only to property actually owned by the state or held in trust for the use of the state. Therefore, we are of the opinion that the chancellor correctly dismissed the petition.

Judgment affirmed.