RENDERED:  FEBRUARY 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0230-MR

HAZEL WELSH                                                          APPELLANT

v.          APPEAL FROM MASON CIRCUIT COURT
            HONORABLE STOCKTON B. WOOD, JUDGE
            ACTION NO. 18-CI-00218

MASON COUNTY EXTENSION
DISTRICT PUBLIC PROPERTY AND
MASON COUNTY EXTENSION
DISTRICT BOARD                                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Hazel Welsh appeals from the Mason Circuit Court's

order granting summary judgment to the Mason County Extension District Board

(the Board) and dismissing Mason County Extension District Public Property (Public Property)[1] in her slip and fall case. We affirm.

The germane underlying facts are simple and seemingly uncontested. In May 2018, Welsh attended a meeting of the Twilight Homemakers' Group at a Mason County Cooperative Extension Service facility in Maysville, Kentucky. Welsh unfortunately fell and fractured her femur, allegedly due to the presence of water or a similar substance on the floor. A few months later, Welsh sued Public Property and the Board, among whose listed functions is to "manage and transact all of the business and affairs" of the county extension service under Kentucky Revised Statutes (KRS) 164.655(1). The defendants soon sought summary judgment. Eventually, the trial court concluded the Board was entitled to summary judgment based on governmental immunity and dismissed Public Property based on Welsh's counsel's prior agreement. Welsh then filed this appeal.

We review a trial court's decision to grant summary judgment to ascertain "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198

---

[1] Public Property's true name apparently is the Mason County Extension District Public Properties Corporation. Because Welsh does not contest its dismissal, we decline to address the impact, if any, of her not using that full name in the trial court and here.

(Ky. 2010) (citations omitted). In so doing, we must view the evidence in the light most favorable to Welsh as the Board was entitled to summary judgment only if it would have been impossible, in a practical sense, for Welsh to have prevailed at trial. *Id.* Because summary judgment involves questions of law, we review the trial court's decision *de novo*. *Id.*

Welsh does not contest the dismissal of Public Property. Her failure to do so means she has waived, or abandoned, any claim(s) of error therein. *See, e.g.*, *Prescott v. Commonwealth*, 572 S.W.3d 913, 927 (Ky.App. 2019) ("Prescott's failure to present an argument on this issue on appeal constitutes abandonment and/or waiver of this argument.").

We now turn to whether the trial court correctly concluded that the Board possesses governmental immunity. Determining whether an entity is entitled to immunity presents a question of law, so we review the trial court's decision *de novo*. *Kentucky River Foothills Development Council, Inc. v. Phirman*, 504 S.W.3d 11, 14 (Ky. 2016). Though Welsh discusses it, determining immunity does not require us to discuss the impact on her claims of the recent overhaul of the open and obvious doctrine undertaken by our Supreme Court.

The Board was created by statute, and the General Assembly explicitly deemed it to be "an agency of the Commonwealth[.]" KRS 164.655(1). However, we disagree with the Board's assertion that it is entitled to sovereign

immunity. As our Supreme Court recently held, "*sovereign* immunity is limited to the Commonwealth itself, as well as counties and governments formed according to statute." *Bryant v. Louisville Metro Housing Authority*, 568 S.W.3d 839, 845 (Ky. 2019) (emphasis original). Therefore, "even as a state agency," the Board "would never be entitled to sovereign immunity." *Id. See also Furtula v. University of Kentucky*, 438 S.W.3d 303, 305 n.1 (Ky. 2014). Instead, the "immunity analysis for [the Board] must turn on the existence or absence of *governmental* immunity." *Bryant*, 568 S.W.3d at 845.[2]

Sometimes, governmental immunity is "used interchangeably" with sovereign immunity, which is not surprising since governmental immunity is "an extension of sovereign immunity[.]" *Id.* However, though "related to and flowing from sovereign immunity," governmental immunity is "a slightly different concept." *Furtula*, 438 S.W.3d at 305 n.1. "The difference between the two is that sovereign immunity is absolute and an inherent aspect of the state, whereas a state agency's immunity is qualified to the extent that its existence depends on whether

---

[2] There are other types of immunity, such as qualified official immunity, which is afforded public officers and employees under certain circumstances, including where they were engaging in discretionary acts. *See*, *e.g.*, *Rowan County v. Sloas*, 201 S.W.3d 469, 475-76 (Ky. 2006). Welsh argues that keeping the floor of the extension district premises free from liquids is a ministerial act, but we need not address that matter since Welsh did not name any specific governmental official(s) as defendants, meaning that the immunity determination is not based upon a ministerial versus discretionary function analysis. Similarly, though Welsh stresses it, the governmental immunity determination is not impacted by the fact that the extension agency did not apparently have a retained custodian on the date Welsh was injured.

the agency is performing a governmental or proprietary function." *Id.* Though recent decisions have taken pains to avoid laxly jumbling the concepts, as a practical matter if the state agency "is performing a governmental function" then "its governmental immunity is functionally the same as sovereign immunity." *Id.*

Our Supreme Court has developed a two-prong test to determine whether governmental immunity exists:

> First, the courts must look to the origin of the public entity, specifically: "was [the entity in question] created by the state or a county [which are entitled to immunity], or a city [which is not entitled to immunity except in the legislative and judicial realms]?" The second and "more important" inquiry is whether the entity exercises a "function integral to state government."

*Coppage Construction Company, Inc. v. Sanitation District No. 1*, 459 S.W.3d 855, 859 (Ky. 2015) (quoting *Comair, Inc. v. Lexington-Fayette Urban County Airport Corp.*, 295 S.W.3d 91, 99 (Ky. 2009)). The second prong encompasses two parts: "whether the entity's function is governmental as opposed to proprietary, and whether it is a matter of statewide concern. These distinctions are important because not every public purpose qualifies as an integral state function." *Id.* at 862 (quotation marks omitted).

The Board readily satisfies the first prong. The General Assembly statutorily authorized county extension districts (KRS 164.620) and extension

boards to govern each extension district. KRS 164.630. Hence, the Board was created by the state, which is cloaked with inherent immunity.

The first element of the second prong requires us to determine whether the Board performs a governmental or proprietary function. "A proprietary function is of the type normally engaged in by businesses or corporations and will likely include an element of conducting an activity for profit." *Bryant*, 568 S.W.3d at 847 (citations omitted).

The Board's statutory function is to "manage and transact all of the business and affairs of its [extension] district[,]" which entails "cooperat[ing] with the extension service and the extension council in conducting an extension program in agriculture, home economics, youth work and related subjects in the extension district." KRS 164.655(1), (5). The purpose of an extension district is to "provide for aid in disseminating among the people of Kentucky useful and practical information on subjects relating to agriculture, home economics, and rural and community life and to encourage the application of the same in the several counties of the Commonwealth[.]" KRS 164.610. Similarly, Heather Cheek, the family consumer science extension agent at the Mason County Cooperative Extension Service, testified in her deposition that the purpose of the extension office is to "provide research[-]based knowledge from the University [of Kentucky] to people in rural communities." And Cheek testified that she

"provide[s] educational programming in seven (7) different areas that relate back to basic like [sic] skills" and serves as an advisor to twelve Homemaker groups totaling about 300 members in Mason County. Thus, the Board and the extension district perform governmental functions.

The second element of the second prong of the governmental immunity test requires us to undertake the "complex endeavor" of ascertaining whether the Board serves an integral statewide function. *Bryant*, 568 S.W.3d at 848. The fact that the Board undeniably serves a public purpose does not inevitably mean it serves an integral statewide function. *Id.* In determining whether an entity serves an integral statewide function, a court must "consider the balance of the entity's functions, not just the particular action at issue in the case." *Transit Authority of River City v. Bibelhauser*, 432 S.W.3d 171, 174 (Ky.App. 2013). This requirement is important because Welsh stresses all the extension district really did for her group was provide meeting space. But the extension district's broad educational mandate encompasses more than providing meeting space, which some proprietary entities in Kentucky also provide. Also undercutting Welsh's proprietary argument is Cheek's seemingly unrebutted deposition testimony that the extension district provides access to its facilities for homemaker groups without charge and that she serves as an advisor to those groups.

To demonstrate that it serves an integral statewide function, the Board must make two showings: first, that it "addresses state level governmental concerns that are common to all of the citizens of this state" because "[s]erving purely local concerns is insufficient." *Id.* (quotation marks and citations omitted). Second, the Board "must show that it serves a function that is integral to addressing that state level concern[,]" which means its actions "must be necessary, an essential part of carrying out that state-level government function." *Id.* (quotation marks and citations omitted).

Because "the General Assembly, to a certain extent, must have the legislative prerogative to enunciate *what* is integral to the state's function[,]" the General Assembly's expressed purposes may help a court determine whether a government agency's function is integral. *Bryant*, 568 S.W.3d at 849 (emphasis original). The General Assembly created extension districts and the boards thereof "to provide for aid in disseminating among the people of Kentucky useful and practical information on subjects relating to agriculture, home economics, and rural and community life[.]" KRS 164.610. In other words, the core purpose of creating an extension district, governed by a board, is educating the residents of our Commonwealth. Indeed, the work of extension districts is "carried on in cooperation with the University of Kentucky College of Agriculture and Home Economics [UK.]" *Id.* And Cheek testified that she applied to UK for her

position, was hired by UK, underwent training provided by UK, and she and the other full-time extension district employees are paid by UK. The extension district and board address statewide concerns on a local level.

Turning to whether the Board's function is integral, the parties have not cited, nor have we independently located, authority resolving whether extension districts and the governing boards thereof are entitled to governmental immunity. But there is a host of published authority stating that public education is an important state function. *See City of Louisville v. Commonwealth*, 134 Ky. 488, 121 S.W. 411, 412 (1909) ("In this state the subject of public education has always been regarded and treated as a matter of state concern."); *Comair, Inc.* 295 S.W.3d at 99 (holding that when determining if a function is integral to state government "[t]he focus . . . is on state level governmental concerns that are common to all of the citizens of this state, . . . include[ing], public education[.]" *Coppage Construction Company, Inc.*, 459 S.W.3d at 864 ("Sewage disposal and storm water management systems are not a traditional and necessary state function such as those functions performed by the state police, our public schools, the corrections system, and public highways and airways."). Indeed, our Supreme Court has explicitly held in *Furtula*, 438 S.W.3d at 305, that "the state universities of this Commonwealth, including the University of Kentucky, are state agencies that

-9-

enjoy the benefits and protection of governmental immunity except where it has been explicitly waived by the legislature."

Obviously, an extension district is not the same as a traditional public school or university. But extension districts similarly provide public education in areas like agriculture and home economics to Kentuckians. Indeed, the extension district is a part of UK, and the memorandum of agreement between UK and the Board provides that the extension program is funded by Mason County and UK— each of which possess immunity. In short, the extension district, and thus its governing Board, serve integral public education-based functions.

Welsh's argument to the contrary notwithstanding, *Coppage Construction, Company, Inc., supra,* does not afford her relief. In that case, our Supreme court determined that a public sewer utility did not possess governmental immunity because it did not perform "a traditional and necessary state function[.]" *Coppage Construction Company, Inc.*, 459 S.W.3d at 864. Education is patently different than providing sewer services; *Coppage Construction Company, Inc.* itself recognized that "public schools" served necessary state functions. *Id.*

Welsh argues, seemingly as a fallback position, that the Board's purchase of liability insurance operates as a waiver of immunity. We disagree.

KRS 67.180(1), heavily relied upon by Welsh, provides in relevant part that, except for Jefferson County, a county's fiscal court may, "in its discretion

-10-

. . . appropriate county funds to purchase policies of insurance . . . covering vehicles operated by the county, and compensation insurance covering employees of the county receiving injuries arising out of and in the course of employment." But Welsh's injuries did not involve a Mason County vehicle, and she was not injured in the course of employment by Mason County. We held in *Knott County Fiscal Court v. Amburgey*, 439 S.W.3d 754, 757 (Ky.App. 2013) that KRS 67.180 did not waive immunity when the case was "not about injuries related to an automobile accident involving vehicles owned by the county" but instead involved "the alleged negligence for failure to remove mud and debris from the roadway and failure to warn of the hazardous condition." The same conclusion applies here.

Moreover, Welsh's arguments are contrary to KRS 49.070(14), which provides in relevant part that "the purchase of liability insurance" by a state agency "for a government-related purpose or duty shall not be construed as a waiver of sovereign immunity or any other immunity or privilege thereby held." *See also Jenkins Independent Schools v. Doe*, 379 S.W.3d 808, 811 (Ky.App. 2012) ("We also hold that the trial court erred when it found that the school board waived its immunity by purchasing liability insurance. Our Supreme Court has held that a school board's liability insurance does not represent a waiver of immunity. *Grayson County Bd. of Educ. v. Casey*, 157 S.W.3d 201 (Ky. 2005). This court ruling has been reaffirmed and codified by the General Assembly: 'the purchase of

liability insurance . . . shall not be construed as a waiver of sovereign immunity *or any other immunity* or privilege thereby held.'"). In short, the extension district's purchase of insurance did not waive its immunity.[3]

For the foregoing reasons, the Mason Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Thomas K. Herren
Lexington, Kentucky

BRIEF FOR APPELLEES:

John Jay Ellis
Morehead, Kentucky

---

[3] Welsh's reliance upon our decision in *Noel v. Welch*, No. 2018-CA-000187-MR, 2019 WL 1213253 (Ky.App. 2019) (unpublished), is misplaced because the Kentucky Supreme Court granted discretionary review of that decision in August 2019, over five months before Welsh filed this appeal. The Supreme Court has not yet rendered its decision in *Noel*, but its granting of discretionary review rendered our Opinion inoperative.