## Pollitt v. Lewis et al.

(Decided June 25, 1937.)

(As Modified on Denial of Rehearing Sept. 28, 1937.)

DYSARD & TINSLEY and PORTER M. GRAY for appellees.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Boyd circuit court by which it sustained a demurrer to and dismissed the plaintiff's petition and likewise made a declaration of rights of the parties. Pursuant to chapter 23 of the Acts of the Fourth Special Session of the General Assembly of Kentucky for 1936-37, the board of education of the city of Ashland has determined to organize and maintain a junior college in that city. In furtherance of this project, it was determined to acquire a site and construct a building for the use of the junior college, through the organization of a private corporation known as the Ashland Junior College Corporation. It is proposed that this corporation will acquire the site and construct the building from the proceeds of an issue of $40,000 in bonds and shall lease the property to the board of education for one year at a stipulated rental sufficient to amortize the bonds, and, in addition, the said board is to pay the costs of insurance, maintenance, and taxes. The board is likewise given an option to renew the lease from year to year, in accordance with a stipulated schedule of annual rentals. It is likewise agreed that, upon the payment of the bonds and accrued

interest thereon, the property will be conveyed to the board.

This suit was filed by a taxpayer to enjoin the board of education and others involved in the project from carrying out the proposed plan. The only questions here argued relate to the constitutionality of chapter 23 of the Acts of Fourth Special Session of the General Assembly for 1936-7. It is insisted (1) that the tax authorized by chapter 23 is a tax imposed for municipal purposes, in violation of sections 181 and 181a of the Constitution; and (2) that a junior college is not a common school within the meaning of section 184 of the Constitution, and no provision is made in the act for the submission to the voters of the question of taxation for the support of the college. The act simply provides that the legislative body of the city shall levy a tax of not less than 5 cents nor more than 7 cents on each $100 of taxable property when requested so to do by the board of education. No provision is made for submission of the question of taxation to the electorate.

The short answer to appellant's first contention is that the act does not attempt to impose a tax for a municipal purpose, or, indeed, to impose a tax at all. It leaves open to the local school board the option to establish or not to establish a junior college. If they determine to establish such an institution, then they may require the council to impose a tax within maximum and minimum limits for this purpose. City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411; District Board, etc. v. City of Lexington, 227 Ky. 7, 12 S. W. (2d) 348; Fox v. Board of Louisville, etc., Home, 244 Ky. 1, 50 S. W. (2d) 67.

A more serious question is presented by the second contention made by appellant. Section 184 of the Constitution, so far as it is pertinent here, provides:

"No sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters, and the majority of the votes cast at said election shall be in favor of such taxation: Provided, The tax now imposed for educational purposes, and for the endowment and maintenance of the Agricultural and Mechanical college, shall remain until changed by law."

It is manifest that the very wording of the pro-

vision of section 184 quoted imports that there are schools of a character different from common schools as mentioned therein. It is equally clear that the framers of the Constitution must have had in mind that they were placing a limitation upon legislative power to expend money for education other than in common schools. If the term "common schools" had a definite meaning in the minds of the draftsmen of the Constitution, it is our duty to give it effect. We must always recognize that we are construing and not constructing that instrument. Though we may disagree with its philosophy, we cannot alter its mandates.

No provisions of the Constitution can well be said to have provoked more discussion and feeling than those relating to the subject of education and particularly to section 184. (See Debates, Constitutional Convention, 1890, Vol. III, p. 4454 et seq.) As originally submitted by the Committee on Education, the section later made section 184 provided, in part:

"No sum shall be raised or collected for education except in the common schools, until the question of taxation is submitted to the legal voters, and a majority of the votes cast in favor of taxation."

An immediate hue and cry ensued, particularly from the friends of the State University, then the Agricultural and Mechanical College. Mr. Jacobs, of Boyle county, as chairman of the committee, in the course of his remarks in submitting the report said:

"A majority of the Committee thought if we departed from our common school method of education, and which has prevailed in the State since 1838, and the taxes for which have always been heretofore levied by popular vote; first of two cents, and then some years afterwards of three cents, and then in 1867 of fifteen cents, making twenty cents in all, and the State desired to add to its system of education what we usually term higher education, that the tax to support higher education, ought to be supported by a popular vote."

W. M. Beckner, of Clark county, was the first of a number of others taking up the gauntlet. In behalf of the minority of the committee, he said, in part:

"The Chairman, in effect, forbids aid to normal schools, the Agricultural and Mechanical College, the Institute for the Deaf and Dumb or the school

for the blind, unless approved by a vote of the people. This was aimed at the college, but it certainly embraces the other institutions which are for educational purposes.''

In arguments too long to be incorporated in this opinion, it was urged that the effect of the adoption of the quoted portion of the committee's report would close the doors of the State University, the normal school, and other institutions of ''higher education'' until a vote of the people could be obtained. Finally, a substitute amendment was offered by Mr. Nunn, of Crittenden county, bringing the phraseology more nearly to the final form of section 184. In speaking to this amendment, Mr. Nunn urged that there should be a limitation upon the power of the Legislature in making appropriations for the institutions outside of the common school system, and said:

''Hence, the necessity of putting into this provision that, before the Legislature of the State of Kentucky can enter into higher education, it must submit the proposition to the people of the State for their ratification. At the bottom of the substitute I provide that all taxes now levied for educational purposes shall remain as now until changed by law. That saves the half cent tax to the A. & M. College, and all the taxes imposed for educational purposes, until the Legislature sees proper to change it.''

Without a further extension of this opinion with quotations from the numerous arguments of the members of the Constitutional Convention relating directly to this subject, it will suffice to say that they demonstrate beyond all shadow of a doubt that the members of the convention did not conceive a college to be embraced in the ambit of the term ''common school.'' Reference was made, several times, in the debates to the decision of this court, under the Constitution of 1850, in the case of Collins v. Henderson, 11 Bush 74, wherein Judge Cofer, speaking for the court, said:

''The words 'common schools' have in themselves no ascertained and definite signification.

''It is only by looking into the history of the common-school system in Kentucky that we are enabled to understand what was meant by those words. If we look to the legislation on this sub-

ject prior to the adoption of the present constitution we find that a common school was a school taught in a district laid out by authority of the school laws, under the control of trustees elected under those laws, by a teacher qualified according to law to teach. [Secs. 18, 19, and 22 Act 16th of February, 1838, 3 Stat. Laws, 528; sec. 3 Act 1st of March, 1842; Ibid, 541; secs. 7 and 11 Act 10th of March, 1843, Sess. Acts, 73]. And all the legislation on the subject since the adoption of the constitution has recognized this definition as being correct as far as it goes."

In the case of City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411, 412, Judge O'Rear in delivering the opinion said:

"The city schools, including high schools, are part of the state's common school system. Their trustees are officers of the state. Such is the effect of the decision in City of Henderson v. Lambert, 8 Bush, [607] 610, and in Combs v. Bonnell, 109 S. W. [898] 899, 33 Ky. Law Rep. 219."

Similarly, the Legislature, itself, has recognized the settled construction placed on these words in section 4363-2 of the Statutes (Acts 1934, c. 65) where it is stated (in part):

"A 'common school' shall be interpreted as meaning an elementary and/or secondary school of the Commonwealth supported in whole or in part by public taxation."

In the case of Agricultural & Mechanical College v. Hager, 121 Ky. 1, 87 S. W. 1125, 1126, 27 Ky. Law Rep. 1178, the Legislature had undertaken to make an appropriation of $15,000 for the benefit of the college. In sustaining the appropriation under the proviso contained in section 184 of the Constitution, the court reviewed the Debates of the Constitutional Convention of 1890 and said:

"The common school system of this state is defined by statute [chapter 113, p. 1524, Ky. Stats. 1903]. It is a uniform series of district schools, each local in its district, but all of general or equal grade throughout the state, varying only according to the population of the districts, and whether the districts have or not adopted the graded or high school system in addition. They afford free tuition

for certain parts of the year to all resident children within the statutory age. They are sustained, in the main, by the income provided by section 184 of the Constitution, by certain taxes levied directly for their benefit, and certain fines and forfeitures. They may be aided, however, by local taxation in addition. Neither the Agricultural and Mechanical College, nor any other institution, is now or was then comprised within the system. No part of the appropriation now in question was derived from the bonds, stock, and income mentioned in section 184 of the Constitution, and inviolably set apart for the common schools. Nor was the question of this appropriation submitted to or passed upon by the voters of the state. If it is upheld, it is because it has been made under a power vested in, or, rather, not withheld from, the Legislature by the Constitution, the evidence of which is to be found within the proviso above quoted.''

In the face of the foregoing authorities, to say nothing of others too numerous to be incorporated here, it can scarcely be disputed that the term ''common schools'' had and has a fairly definite signification and, whatever else it may include, it does not include a college. Neither the ipse dixit of this court nor the pronouncements of the Legislature can make an institution a part of the common school system contrary to the mandate of the Constitution. As if to remove all doubt of the nature of the institution before us, the act itself provides in section 5:

''A municipal junior college shall be entitled to support under this act only when its principal work is the maintenance of courses of instruction in advance of the instruction maintained in high schools under the control of the Board of Education.''

Plainly, a junior college such as here proposed is, and can be, no part of the common school system and we are brought face to face with the proposition that ''no sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters.''

It is argued that the inhibition against devoting funds raised for education to other than common schools applies only to the Legislature and not to local political units. There is no such limitation in section

184, and it is difficult to see how the Legislature can authorize a municipality to levy a tax without a vote of the people when it has no power itself to do so. In the case of Wilson v. Board of Education, 226 Ky. 476, 11 S. W. (2d) 143, 144, it was sought to issue bonds of a school board to raise funds with which to pay a street assessment under a specific legislative authorization. In holding the act invalid under the first part of Section 184, the court said:

"Manifestly, if the Constitution forbids the use of the common school fund for the purpose of paying street improvement assessments, the Legislature is without authority to authorize such use."

Obviously, the court was not limiting its remarks there to funds raised by state-wide taxation alone. The Debates of the Constitutional Convention disclose no such narrow purpose and the language is unambiguous. "No sum shall be raised or collected for education other than in common schools" can mean only what it says. The Legislature may authorize the levying of all the taxes it wants to for common schools, but it cannot authorize the levy of a tax for education other than in common schools without a vote of the electorate. Howsoever much we as individuals may approve the measure here proposed, the choice is not ours, but must rest with the majority of those persons who will be taxed to support it.

The only points argued in the case at bar relate to the validity of so much of the act as undertakes to authorize the imposition of a tax without the consent of the voters. We see no reason why the remainder of the act may not be valid and the provision for the levy of a tax be separable therefrom. It follows from what we have said, however, that the trial court erred in sustaining a demurrer to the petition.

No reason presents itself which would lead us to conclude that the general council of the city may not call an election to determine whether or not the tax proposed shall be levied. Whether section 184 of the Constitution is self-executing or not, it would appear that the general grant of powers to cities of the second class would include the right to call an election for this purpose. Ky. Stats., 1936 Ed., secs. 3038, 3069.

Judgment reversed.

Whole court sitting.