# Carter et al. v. Taylor, Judge, et al.

July 6, 1950

Rufus Lisle, Special Judge

Dailey & Fowler, Charles Cox, Wyatt, Grafton & Grafton for appellees.

STANLEY, COMMISSIONER—Affirming.

The judgment approves the plan and contracts by which the board of education and the fiscal court of Nicholas County propose to erect a high school building and to issue $250,000 in bonds, bearing 2¾ per cent interest, payable from rents received annually from the board of education over a period of twenty years. The proposed venture is attacked in this suit by citizens and taxpayers. The fiscal court, the board of education and their respective members and three brokerage concerns who have agreed to buy the bonds are the appellees. The appellants' contentions are, (1) the lease provisions of the contract between the board and the fiscal court are unilateral and unenforceable, and the provisions of the statute which authorized such a contract are unconstitutional since such authority is in itself a violation of the law of contracts requiring mutuality and, (2) the scheme and plan is so detrimental to the public interest as to be an abuse of administrative discretion. Certain procedural matters concerning which contentions were made seem to have been straightened out.

1. The Statutes authorize the conveyance of land by a county board of education to the fiscal court, the erection of a building by the court and the issuance of bonds to be paid out of rents to be received from the board of education annually. KRS 162.120—162.-300. The language of KRS 162.140 is: "The board of education shall offer to lease the building for a term of one year from the time the building is completed and ready for occupancy. The lease by its terms shall give the lessee the right and option to extend the term of the lease from year to year for periods of one year, until the original term of the lease has been extended for a total number of years." etc. There is no express provision in the Statute with reference to the fiscal court accepting the offer or to renew the lease from year to year.

The contract between the board of education and the fiscal court in this relation conforms specifically with the terms of the statute. The county agrees to erect the building and "to lease the same to the Board

of .Education, and said Board of Education hereby agrees to lease said site and school building as aforesaid in accordance with the provisions set forth in KRS 162.140 for a period of one year with exclusive options to said Board of Education for the renewal thereof from year to year for one year at a time as hereinafter provided, the stipulated rentals to be in sums sufficient to amortize the unpaid portion of the cost of said school building to said County as evidenced by its school Building Revenue Bonds dated April 1, 1950, and from time to time outstanding, together with the cost of maintaining and insuring said school building property, all subject to the following terms and conditions:

"First: It is agreed that said school property and building are to be used and occupied by said Board of Education for educational purposes on a fiscal year basis commencing April 1, 1950 and ending March 31, 1951, and for successive similar fiscal years thereafter as long as the Board of Education exercises its annual renewal options, and that the rentals to be paid by the Board of Education to the County during .the initial fiscal year and each successive year if renewed shall be as set forth in the following schedule:"

There follow statements of the annual rentals to be paid, beginning with the fiscal year ending March 31, 1952, which is $8,500 and concluding with March 31, 1971, the amount increasing progressively (with minor variations) to $22,660 per year, and the repetition of the condition which gives the board of education the exclusive option to renew the lease from year to year. The contract, like the statute, contains no express reciprocal obligation on the part of the fiscal court to recognize any such exercise of the option, nor any provision by which the fiscal court undertakes to obligate itself and its successors to accept the same. To the extent that there is no express obligation, it may be said that the contract is unilateral, and therefore, unenforcible. But if that prospective feature of the plan were otherwise legally binding, an implied obligation on the part of the fiscal court to renew the lease would probably have to be regarded.

The contract is bilateral in so far as it covers the first year. It has been pointed out in numerous cases

that this plan of financing the construction or improvement of schoolhouses and other public buildings creates no binding contract upon either the fiscal court or the board of education in its prospective provisions, for no public body may constitutionally incur an aggregate financial obligation in excess of its revenues for the year, and the sum total of the rentals for twenty years would certainly do so. The Board of Education may be and it is held legally bound for only one year. Davis v. Board of Education of City of Newport, 260 Ky. 294, 83 S.W.2d 34; Fiscal Court of Jackson County v. Board of Education, 268 Ky. 336, 104 S.W.2d 1103. It may be observed that as a matter of probable necessity both parties will from time to time, as the annual periods are reached, continue the lease and make it valid and binding by ratification year by year. But whether or not that be done is at present no concern of the courts. That is a risk assumed by the bondholders, which risk, however, is counterbalanced not only by the demands of expediency and necessity of the situation, but by the legal rights provided in the statute and contract.

2. The argument that the proposed plan is detrimental to the public interest to the degree that the court should hold it to the arbitrary and an abuse of discretion is two-fold, though combined. One aspect is in the plan itself. It is contended that the project is not only unnecssary but that it jeopardizes the future program of the county's educational system. The other aspect is that of financial ability.

At present there are about 150 high school pupils in the county system. Before 1947 the County Board of Education had taken care of these pupils by contract with the independent Carlisle School Board, and since then by maintaining a county high school at Headquarters, along with elementary grade pupils of that community. It is pointed out by appellants that there is no congestion and the proposed new building will give only two more schoolrooms than the facilities at the Headquarters building; that the ten acres acquired at the edge of Carlisle is not suitable for an athletic field, and if it were that there will not be in the foreseeable future any funds for its development, while the Carlisle high school property is adequate for all students and all their activities. It appears there has been no effort made lately to contract with that board or to consolidate

the two districts, which the appellants say affords an economical and better solution of all the problems. The Board of Education counters the argument by showing that the Headquarters building is scarcely adequate for even the grade pupils; that the arrangement has been only temporary; that the location is in the extreme western part of the county, which makes it inconvenient and presents transportation difficulties and expense, while the new location is central and more convenient all around. No response is made to the suggestion of contracting or merging with the Carlisle high school.

These respective contentions present a matter strictly for administrative decision, and the Board has made its decision. As in the Shelby County project, (Bell v. Board of Education of Shelby County, supra,) the appellants' claim that the decision is an abuse of discretion warranting judicial interference is coupled with the claim of financial inability to fulfill the accompanying obligation. In that case we expressed the opinion that the Board had not fully considered all the factors, nevertheless we held, as in Fyfe v. Hardin County Board of Education, 305 Ky. 589, 205 S. W. 2d 165, and other cases, that this is a matter of school control and management vested in the Board of Education. KRS 160.290 (1). The disapproval of the project was based upon insufficient revenues, plus the omission of approval by the State Board of Education. Here the County Board, in the exercise of its statutory discretion, has promulgated the plan and the highest educational administrative body, the State Board has approved it. The judicial branch of the government will not substitute its own judgment for such quasi legislative and quasi executive action unless it clearly exceeds statutory or constitutional limitations of power. The rationale of the principle of judicial noninterference has been fully elaborated in many opinions and does not need repetition. We proceed upon this hypothesis to examine the financial factors.

It may well be said in this connection that as the prospective part of the scheme does not constitute a binding legal obligation, it is no concern of the courts. But in all these cases we have regarded this in a realistic way by appreciating the fact that the Board is entering upon a venture which will entangle its future financial operations and impose strong moral commitments. The

bondholders cannot rely upon the credit of the Board of Education or of the County itself. They must rely upon the good faith and the assumption of favorable action because of the necessities of the situation as it develops, plus the lien on the property and other remedies. However, the experience of the past decade and longer, so far as we are advised, has proved this confidence to have been well founded and the security to have been dependable.

The population of Nicholas County according to the 1940 census is 8,617. Recently reported unofficial census of 1950 is less. The estimated assessment of property for taxation in the county for 1950 is $6,425,000, which is based upon the present unusual high valuation of property everywhere. It represents an increase in six years of about $700,000. The County itself has an existing bonded debt of $225,000, and the County Board of Education of approximately $100,000. As an interesting factor, it is shown that the independent Carlisle District has a bonded debt of $50,000. Thus, already the people have a heavy financial obligation. To that will be added the present commitment of $250,000, in revenue bonds. The heavy burden upon all the revenues is quite impressive.

The statistics submitted to the court as proving financial ability consists of detail statements of past accounting and of a hypothetical typical year for the immediate future. It was upon these figures that the finance officer of the State Board of Education based his approval of the project as being sound. The appellants, who are very vigorously contesting the proposal, find several flaws in the estimates of the future, both of revenue and disbursements. They contend there is a margin of only $1,357 upon which to rely. Some of the criticism seems to be well founded. The past operation has been upon an annual tax of $1.40, while the future anticipates a tax of $1.50, the maximum. The special circuit judge analyzed the statements and reached the conclusion that there will be revenues of $180,000 and operating expenses of $155,000, thereby making available $25,000 for servicing the debts and meeting the rentals of the earlier years, all of which will amount to $23,000. The Board of Education points to the fact that there has not heretofore been levied any poll tax for the

district, and that here is a potential additional revenue of 1,800 polls of $2.00, or $3,600 more than the estimate.

It seems to us that the court properly regarded all this financing as a matter of reasonable administrative discretion rather than proof of arbitrary action or abuse of discretion that would justify judicial interference. We concur in that view.

The judgment is affirmed.