**H. B. RANIER, Etc., Appellant,**

v.

**BOARD OF EDUCATION OF PRESTONS-BURG INDEPENDENT SCHOOL DISTRICT OF FLOYD COUNTY, Kentucky, et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 10, 1954.

E. H. Tackett, Prestonsburg, for appellant.

Joseph R. Rubin, Hays & Fahey, Louisville, S. C. Ferguson and Joe Hobson, Prestonsburg, for appellees.

J. D. Buckman, Jr., Atty. Gen., W. Owen Keller, Asst. Atty. Gen., amicus curiae.

CULLEN, Commissioner.

This appeal is from a judgment declaring the rights of the parties with respect to certain action taken and proposed by the Floyd County School District and the Prestonsburg Independent School District. In particular the action sought an adjudication as to the effect a proposed merger of the two districts would have on $226,000 of school building revenue bonds to be issued by the City of Prestonsburg in cooperation with the Board of Education of the Prestonsburg Independent School District, and the effect of such merger on a special school building tax approved by the voters of the independent district at an election held on March 26, 1954.

The Floyd County Board of Education is constructing at a cost of some $445,000, procured through the sale of Floyd County school building revenue bonds, a modern high school building in the City of Prestonsburg. The high school building as such does not include a gymnasium or auditorium and the county board within its present or anticipated revenue is unable to finance such facilities. The county and independent districts through their respective boards are contemplating a merger in the immediate future and are interested in providing a gymnasium-auditorium for use of the students of the merged district. To that end a special school tax election within the independent district was held on March 26, 1954, pursuant to the provisions of KRS 160.477, at which a majority of those voting favored the tax. As a result of the election the board of the independent district was authorized to levy or cause to be levied for a period of 25 years a special tax of from 5 cents to 35 cents upon each $100 of taxable property, the funds to be used for the purposes enumerated in the statute under which the election was held. Thereupon the two boards agreed that the auditorium-gymnasium would be financed pursuant to the following arrangements:

(1) The City of Prestonsburg and the independent district would cooperate in the issuance of approximately $226,000 of City of Prestonsburg school building revenue bonds pursuant to KRS 162.120–290 to provide the funds to pay the cost of the proposed building.

(2) Such building would be constructed upon the site of the proposed county high school building and immediately adjacent thereto.

(3) The county board would convey to the independent district board the site of such building.

(4) The independent district board would then convey the site to the city which would in turn lease it back to the independent board at an annual rental sufficient to amortize the proposed bond issue, with the provision that upon retirement of all bonds the premises would be reconveyed to the board of the independent district.

(5) Simultaneously with the execution of the latter instrument the board of the independent district would sublease the proposed building to the county board at a rental of $1 per year with the county board having supervision and control thereof, and with the provision that after the bonds were retired and a reconveyance was obtained by the independent district, the independent district would reconvey the property to the county board.

(6) All of these provisions were subject to the approval of the court, and it was also provided that if the proposed merger should affect the proposed bond issue or the special tax the county board was free to withdraw from the arrangement or make other agreements.

The independent district board applied to the State Department of Education for approval of the bond issue and the department refused to approve bonds in that amount unless and until it was judicially determined that the proposed merger would not affect the validity of the bonds and that the resulting district after merger would have the authority to require the levy of the special tax within the area of the former independent district. Meanwhile, the City of Prestonsburg, whose cooperation is required if the bonds are issued, refused to participate in the arrangement pending a determination of these questions.

Upon the legal issues in controversy the lower court adjudged:

(1) The City of Prestonsburg is required to cooperate with the Board of the Prestonsburg Independent District in the issuance of such bonds.

(2) The merger of the districts will not affect the validity or status of the bonds and when such merger occurs the merged district will succeed to all the rights and liabilities of the independent district under the lease-option agreement.

(3) Regardless of whether or not the merger occurs, all property located within the boundaries of the independent district on March 26, 1954 will remain subject to the special school tax for a period of 25 years, which tax, after the merger, may and shall be levied by the Floyd Fiscal Court.

(4) The special tax will be in effect after the merger, regardless of whether or not the merger is accomplished by joint action of the two boards, by order of the State Board of Education, or by an Act duly enacted by the General Assembly.

(5) The proposed auditorium-gymnasium is a school building within the meaning of KRS 160.477.

(6) The proposed agreement between the two boards is valid.

█ We are in agreement with the lower court in its conclusion that the City of Prestonsburg is required to cooperate with the independent district in the issuance and sale of the bonds. The City of Prestonsburg is merely a conduit through which the board of education acts to have the bonds issued and sold. The city has no discretion in the matter and it was properly required to lend its cooperation to the agreement proposed by the board of the independent district. Fyfe v. Hardin County Board of Education, 305 Ky. 589, 205 S.W.2d 165; Franklin County v. Franklin County Board of Education, 267 Ky. 554, 102 S.W.2d 1024; Carter v. Taylor, 313 Ky. 445, 231 S.W.2d 601; Hopkins County Fiscal Court v. Commonwealth, Ky., 252 S.W.2d 875.

█ It is likewise clear that the validity of the bonds will not be affected by the merger. Bonds issued pursuant to KRS 162.120–300 do not constitute direct obligations of the independent school district. They are secured by a first lien upon the gymnasium-auditorium and the right of the bondholders to enforce the lien is in no

580

way affected by the merger. The only obligation which the city undertakes is that it will apply the rental which it receives to a sinking fund for the payment of the bonds. The only obligation of the independent district is that it will pay the first year's rental and rentals accruing under any renewals of the lease. The new district, after the merger, succeeds to the same rights and obligations as the independent district.

■ The vital question in the case concerns the right of the county school board, following merger, to continue the special levy within the area formerly embraced by the independent district. As we view the case, the answer to this question does not depend upon whether or not revenue bonds are issued. It is simply a question of authority to levy a tax. We think the answer depends solely upon construction of the statute under which the tax was voted, KRS 160.477.

It is obvious that the purpose of the statute is to provide means for the acquisition of school facilities in the territory in which the tax is voted. The statute prescribes a method by which the school authorities may be granted power to impose a tax in the territory. As we read the statute, there is nothing to indicate any legislative intent that the power to impose the tax shall be restricted to the particular school authority that happens to be in charge of the school affairs of the territory at the time the tax is voted.

It is our opinion, a fair construction of the statute is that the vote in favor of the tax constitutes a continuing grant of power to impose the tax, to whatever school authorities may from time to time be vested with the control of school affairs in the territory in which the vote was taken. Surely, it can be of no concern to the people of the territory whether the tax is imposed by one board or another, so long as the proceeds of the tax are used to provide school facilities in the territory. The people have consented that the tax be levied for school purposes in the territory, and the question of who shall levy the tax is not important.

This construction of the statute does not conflict with the decision in Board of Education of Fayette County v. Board of Ed. of Lexington Independent School District, Ky., 250 S.W.2d 1017. In that case, the question was whether property divorced from the territory in which the tax was voted would remain liable for the tax. It was not a case of a substitution of a different governing authority over the territory in which the tax was voted. The divorced property would not receive the benefits of the school facilities for which the tax was voted.

A different situation also was presented in Owsley County Board of Education v. Owsley County Fiscal Ct., 251 Ky. 165, 64 S.W.2d 179. There, the people of a school district had voted an indebtedness, but had not voted a tax to pay the indebtedness. The power to impose a tax to pay the indebtedness arose by virtue of the Constitution and statutes. The holding in that case was that the county district, upon absorbing the subdistrict, was required to assume the subdistrict debt, and that the power to levy a tax to pay the debt was not an independent asset of the subdistrict but merely a power that existed in relation to the obligation to pay the debt. When the county district assumed the debt, the power of the subdistrict simply expired.

Under our interpretation of the statute, KRS 160.477, the power to impose the voted tax may be exercised by whatever school authorities may from time to time have control of the school affairs of the territory in which the tax was voted. However, since the tax was voted to provide school facilities in the territory in which the vote was had, the proceeds of the tax must be devoted to school facilities that may be used by the people of that territory.

■ The judgment below declared that all property within the boundaries of the independent school district on March 26, 1954 (the date the tax was voted), will remain subject to the tax for the full period of 25 years, regardless of whether or not a merger occurs. This declaration was unnecessarily broad, and was incorrect to the

extent that it conflicts with the decision in Board of Education of Fayette County v. Board of Ed. of Lexington Independent School District, Ky., 250 S.W.2d 1017.

The judgment below also was unnecessarily broad in declaring that the voted tax will continue in the event of a merger accomplished under a future enactment of the General Assembly. The parties were not entitled to a declaration in that speculative field.

■ The remaining two questions in the case are less controversial. We think the proposed auditorium-gymnasium is a school building within the meaning of KRS 160.477 and 162.120–300. This view is not in conflict with our opinion in Board of Education of Louisville v. Williams, Ky., 256 S.W.2d 29, 30. In that case we held that an outside football stadium did not constitute a "school building" within the meaning of KRS 162.080 and KRS 160.476. We there pointed out that although a stadium was a structure which might be legally constructed through some other means of financing, it did not constitute a school building within the meaning of the particular statutes in question. We defined a "school building" as a structure which encloses space for a useful purpose. The statutes here involved are KRS 160.477 and KRS 162.120–290. The former section provides that the tax shall be used for the purpose of erecting and equipping new school buildings and for the purpose of financing any program for the acquisition or improvement of schools. KRS 162.120–290 provide for the issuance of school building revenue bonds to finance the erection of school buildings "and necessary appurtenances". It is clear that an auditorium-gymnasium is a "structure which encloses space for a useful purpose."

■ We are also of the opinion that the sublease agreement between the two boards is valid. Substantially similar agreements have been approved a number of times by this Court. Button v. Trimble County Board of Education, 235 Ky. 771, 32 S.W.2d 345.

The judgment is reversed to the extent it declares that all property within the boundaries of the Prestonsburg Independent School District on March 26, 1954, will remain subject to the voted tax for a period of 25 years, and to the extent it declares that the tax will remain in effect in the event a merger is accomplished under a future Act of the General Assembly. These declarations will be eliminated from the judgment. In all other respects the judgment is affirmed.