C. E. MONTAGUE, Jr., Individually, etc., Appellants,

v.

BOARD OF EDUCATION OF ASHLAND INDEPENDENT SCHOOL DIS- TRICT, etc., et al., Appellees.

Court of Appeals of Kentucky.

April 22, 1966.

J. W. McKenzie, Ashland, for appellant.

W. H. Dysard, Dysard, Johnson & Welch, Ashland, Jo M. Ferguson, Grafton, Ferguson, Fleischer & Harper, Louisville, for appellees.

DAVIS, Commissioner.

This is a declaratory judgment proceeding, in which the appellants (defendants below) represent, as a class, the owners of taxable property within the boundaries of the Ashland Independent School District. The fundamental questions involved relate to the validity of certain agreements between the appellees, Board of Education of Ashland Independent School District (hereinafter Board) and the Board of Trustees of the University of Kentucky (hereinafter the University), as those agreements affect the junior college program in Ashland and the seven (7¢) cent special tax approved by Ashland voters in 1937 for a junior college program. The trial court declared the plans of the ap-pellees legal in all respects. Before delineating the issues we state the background of this controversy.

In Pollitt v. Lewis, 269 Ky. 680, 108 S. W.2d 671, 113 A.L.R. 691, this court sustained the validity of legislation authorizing a second-class city to establish a junior college program. The cited opinion ·directed that no tax could be levied for junior college purposes without approval of the electorate of the district. Following the rendition of that opinion the electorate of the Ashland Independent School District did approve a tax levy of seven cents per hundred dollars' worth of taxable property in the district for the purpose of establishing and maintaining a junior college at Ashland. The pertinent legislation, as modified since the *Pollitt* decision, is now compiled as KRS 165.210 through 165.260.

The junior college at Ashland was established and has flourished; demands for its services so increased that the revenue derived from the annual special tax became inadequate to afford the educational program desired. The Ashland Board entered into a written agreement with the University in 1957, by the terms of which the two entities recognized their mutual responsibilities in the junior college field of education. In order to fulfill these responsibilities it was agreed that (1) the Ashland Junior College be recognized as the Ashland center of the University of Kentucky, (2) the University would provide courses of study and administration for the junior college, ample to comply with the Board's obligation respecting the junior college program, (3) the Board would provide the buildings, land, equipment and other facilities for the program—to the extent of the existing junior college property—and such additional as might be needed, as it might procure from the special tax revenue, (4) all other expenses, including salaries for teachers, would be defrayed by the University, and the University would receive the tuition and other fees arising from the operation. The 1957 agreement

contained provisions enabling the Board to terminate the agreement upon written notice, in the event of failure to accomplish its responsibilities under the statutes.

The junior college program has been conducted within the framework of the 1957 agreement, and the special tax has continued to be levied. The continued growth in demand for an expanded educational program has made it apparent that the existing facilities are inadequate. The physical situation of the present campus is such that it is not practicable to undertake any enlargement or expansion at that site. In a combined effort to cope with the recognized problems the Board and University entered into a Supplemental Agreement, December 31, 1964, the terms of which we now summarize.

The University has by appropriate resolution recorded its fixed intention to provide for the enlargement and expension of the "Community College" (the junior college) at Ashland, subject to the condition that the Board shall furnish to the University, without cost to the University, a fee simple unencumbered site suitable and adequate for such purpose. The Board and University have mutually selected a suitable forty-three acre site for relocation of the campus, and they covenant with each other to acquire the site, upon the terms and conditions hereafter related, subject to a judicial determination of the legality of the project.

The proposed plan, for which judicial sanction is sought in this action, is as follows: the Board will effect the formation of a non-profit, no-capital-stock corporation pursuant to KRS Chapter 273; the corporation shall serve as an agency and instrumentality of the Board in the acquisition of the proposed new campus site. The Board will transfer title to the present campus to the non-profit corporation; title to the newly acquired site shall also be placed in the corporation. The latter will issue its first mortgage bonds, secured in part by a mortgage

on the present campus and upon the to-be acquired site; the proceeds of the sale of the bonds shall be applied solely to payment of the purchase price of the new site and the expenses incident to such purchase. It is contemplated that the Board will lease the present site from the corporation, upon a year to year basis (with exclusive options permitting the Board to renew from year to year, one year at a time, upon such terms as will be payable solely from the proceeds of the special seven (7¢) cents voted tax). This plan envisions that the corporation will retire the principal and interest of the bonds solely from the rentals received from the Board.

The agreement provides that the first mortgage bonds shall contain provisions authorizing the release from the mortgage lien of certain parts of the new site, when and if the University has properly demonstrated its purpose to erect upon that portion of the new campus one or more buildings suitable for educational purposes in connection with the junior college. In such instances, the fee simple title to the released portion of the tract shall be conveyed to the University. It is provided that the existing campus site may be sold—when adequate facilities shall have been provided at the new campus—and the proceeds of such sale shall be applied to the principal and interest of the first mortgage bonds. The Supplemental Agreement provides that "the total acreage which may be so released and conveyed without other consideration shall not exceed, in the aggregate, eighty per cent (80%) of the total area or acreage of the new site herein referred to * * *."

The appellants present these assertions of error as bases for reversal: (1) The seven cents special tax voted in 1937 has served its purpose and may no longer be collected, because (a) the proceeds of the tax will be paid over to a non-profit corporation for payment of bonds, (b) the tax levy is discriminatory and arbitrary and results in double taxation,

and (c) a continued collection of the special tax would violate Section 184, Kentucky Constitution; (2) the contracts between the Board and the University are void because the Board has unlawfully surrendered and delegated its powers to the non-profit corporation and the University, and (3) the City of Ashland was a necessary party to this action, but not brought before the court.

█ The basis for the assertion that the special tax has served its purpose is the bald statement that since there is no outstanding indebtedness against the junior college there is no need for the tax. The short answer to that contention is that the enabling statute (KRS 165.220) provides that the special taxes collected under it shall be for the purpose of " * * * establishing, acquiring and operating the college." The fact that there is no debt to be paid from the tax is without significance. The college must be operated.

█ The contention that the tax is discriminatory and arbitrary, and effects double taxation, is interwoven with the argument that tax assessments in 1937—when the tax was voted—were substantially less than the fair market value of the taxable property. Now, in light of this court's decision in Russman v. Luckett, Ky., 391 S.W.2d 694, that the Constitution requires property to be assessed at its fair cash value, it is argued that the voters in 1937 would not have voted for the tax if they had known that assessments would rise. The seven cent levy now becomes a twenty one cent levy, it is said, and this results in taxation at more than double the voted rate. We think it may not be said that voters in 1937 were entitled to assume that assessed values would be fixed in violation of the Constitution. We are not persuaded by that phase of the argument.

█ It is reasoned that since the University has established community colleges in other Kentucky cities without any local special levy, it is discriminatory to continue the seven cent levy in Ashland. What has occurred in this respect in other communities is not pertinent. What inducements may have influenced the location of community colleges is not shown in this record, nor would it have been material anyway. The fact is that the method here employed presents a feasible and propitious opportunity for the Board and the University to present an educational opportunity to an important segment of the Commonwealth, which opportunity neither entity may have been able to afford without the other's co-operation.

What we have said disposes of the claim that to enforce the seven cent special tax is to violate Section 184, Kentucky Constitution. The people have voted the tax in compliance with the cited section of the constitution.

█ Neither do we agree that the Board has unlawfully surrendered or delegated its powers to the non-profit corporation and the University. The 1957 agreement and the 1964 Supplemental Agreement provide for the Board's participation in and approval of the educational program. The agreements enable the Board to withdraw from the plan whenever it is seen that the Board's responsibilities and obligations are not being served. It seems plain that the purpose of the special tax was to assure a junior college facility for the people of the Ashland community. The record discloses that but for the joint efforts of the Board and the University the continuation of Ashland's junior college program would have been a doubtful thing. We hold that the Board's acceding to the University's supplying the faculty and prescribing the curriculum is not a surrender of power. The Board reserves the right to be assured that these services comport with the best interests of the objective—the presentation of the best possible junior col-

lege program. Certainly there is no surrender to the non-profit corporation; that body is a mere agency designed to subserve the purposes of the Board.

It is suggested that should the University fail to renew the contract from year to year the college program would collapse and the monies derived from the special tax would be lost. That is a possibility. On the other hand, if the local efforts to maintain the junior college program had become so inadequate as to require the abandonment of the effort, about the same result would have occurred. It is true that in the latter hypothesis the Board could salvage something by disposing of the assets—but the question would then arise as to the legal disposition of the proceeds. It must be recalled that the special tax levy was *not* for common school purposes, so any monies thus realized likely could not have been channeled into common school funds. Obviously it would be impracticable to undertake a refund of any of the "special tax" assets.

We hold that the City of Ashland was not a necessary party to this declaratory judgment action. As the tax levying authority for the Board, it is the duty of the the City of Ashland to levy the voted special tax, but the City's role in the premises is merely ministerial and perfunctory. As often noted in such cases, the tax levying authority in such instances is a "conduit" only. Cf. Franklin County v. Franklin County Board of Education, 267 Ky. 554, 102 S.W.2d 1024; Fyfe v. Hardin County Board of Education, 305 Ky. 589, 205 S.W.2d 165; Ranier v. Board of Education of Prestonsburg Independent School District, Ky., 273 S.W.2d 577.

Appellants assert that the effect of the judgment before us is to require the perpetual levy of the special tax. We do not so construe it. The Board yet retains the option to withdraw from the program, as before noted.

The judgment is affirmed.